UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOCUMENTED,

        Plaintiff,

    v.

DEPARTMENT OF HOMELAND
SECURITY,

        Defendant.

Civil Action No. 21-3142 (RCL)

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

BACKGROUND ................................................................................................................. 1

LEGAL STANDARDS ....................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

I.     The Department Properly Invoked the Attorney-Client Privilege and Work Product Doctrine to Withhold Memoranda on Honduras and Nicaragua's Status Designations..... 3

     A.     Both the Attorney-Client Privilege and the Work Product Doctrine Protect the Memoranda ............................................................................................... 5

     B.     Disclosing the Memoranda Foreseeably Would Harm Interests That Both the Attorney-Client Privilege and Work Product Doctrine Protect ............................. 6

II.     The Department Properly Invoked the Deliberative Process Privilege ............................. 9

     A.     The Department Properly Withheld a Memorandum on Migrant Protection Protocol Immigration Hearing Facilities Contracts at Two Ports of Entry .......... 10

          1.     The Deliberative Process Privilege Protects the Memorandum ............... 10

          2.     Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects ...................................................................... 11

     B.     The Department Properly Withheld the Memoranda on Honduras and Nicaragua's Status Designations................................................................... 14

          1.     The Deliberative Process Privilege Protects the Memoranda.................. 14

          2.     Disclosing the Memoranda Foreseeably Would Harm Interests That the Privilege Protects ...................................................................... 15

     C.     The Department Properly Withheld a Memorandum to the USCIS Director and Assistant Secretary for International Affairs From the Acting Secretary............. 16

          1.     The Deliberative Process Privilege Protects the Memorandum ............... 16

          2.     Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects ...................................................................... 17

     D.     The Department Properly Withheld a Memorandum on Whether to Extend or Terminate Haiti's Status Designation .................................................... 18

          1.     The Deliberative Process Privilege Protects the Memorandum ............... 18

          2.     Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects ...................................................................... 18

     E.     The Department Properly Withheld a Memorandum on Whether to Extend or Terminate Somalia's Status Designation ................................................. 19

          1.     The Deliberative Process Privilege Protects the Memorandum ............... 20

          2.     Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects ...................................................................... 20

III.     The Department Released All Non-Exempt, Reasonably Segregable Materials.............. 21

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Avila v. Dep't of State*,
Civ. A. No. 17-2685 (RC), 2022 WL 2104483 (D.D.C. June 10, 2022) .................................. 7

*Benjamin v. Dep't of State*,
178 F. Supp. 3d 1 (D.D.C. 2016) .................................................................................. 2

*Campaign Legal Ctr. v. Dep't of Just.*,
34 F.4th 14 (D.C. Cir. 2022) ....................................................................................... 13

*Cayuga Nation v. Dep't of the Interior*,
Civ. A. No. 20-2642 (ABJ), 2022 WL 888178 (D.D.C. Mar. 25, 2022) .................................. 7

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ..................................................................................... 14

*Comm. for Freedom of the Press v. Customs & Border Prot.*,
567 F. Supp. 3d 97 (D.D.C. 2021) ................................................................................. 7

*Dalal v. Dep't of Just.*,
643 F. Supp. 3d 33 (D.D.C. 2022) ................................................................................. 6

*Ecological Rights Found. v. EPA*,
Civ. A. No. 19-0980 (BAH), 2021 WL 535725 (D.D.C. Feb. 13, 2021) .................................. 7

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ..................................................................................... 21

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
141 S. Ct. 777 (2021) ............................................................................................. 9, 10

*Flyers Rts. Educ. Fund, Inc. v. FAA*,
71 F.4th 1051 (D.C. Cir. 2023) ................................................................................ 21, 22

*Formaldehyde Inst. v. Dep't of Health & Human Servs.*,
889 F.2d 1118 (D.C. Cir. 1989) ................................................................................... 12

*Fox v. Massey-Ferguson, Inc.*,
172 F.R.D. 653 (E.D. Mich. 1995) ................................................................................ 6

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
778 F.3d 142 (D.C. Cir. 2015) ................................................................................... 4, 5

**Cases (cont.)**

*Gen. Elec. Co. v. Johnson*,
    Civ. A. No. 00-2855 (JDB), 2007 WL 433095 (D.D.C. Feb. 5, 2007)......................................6

*Gibson v. Ford Motor Co.*,
    510 F. Supp. 2d 1116 (N.D. Ga. 2007) ........................................................................5

*Hickman v. Taylor*,
    329 U.S. 495 (1947).....................................................................................................4

*In re eBay Seller Antitrust Litig.*,
    Civ. A. No. 07-1882, 2007 WL 2852364 (N.D. Cal. Oct. 2, 2007)............................5

*In re Lindsey*,
    158 F.3d 1263 (D.C. Cir. 1998) ..................................................................................3

*In re Sealed Case*,
    107 F.3d 46 (D.C. Cir. 1997) .......................................................................................3

*Jud. Watch, Inc. v. Dep't of Just.*,
    Civ. A. No. 19-0800 (TSC), 2023 WL 3055426 (D.D.C. Apr. 24, 2023) ........... 12, 13

*Jud. Watch, Inc. v. Dep't of State*,
    Civ. A. No. 14-1242, 2019 WL 2452325 (D.D.C. June 12, 2019) ............................5

*Jud. Watch, Inc. v. Dep't of Treasury*,
    802 F. Supp. 2d 185 (D.D.C. 2011) ............................................................................6

*Khatchadourian v. Def. Intel. Agency*,
    597 F. Supp. 3d 96 (D.D.C. 2022) ................................................10-11, 15, 17-18, 20

*Kodish v. Oakbrook Terrace Fire Prot. Dist.*,
    235 F.R.D. 447 (N.D. Ill. 2006) ..................................................................................6

*Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*,
    Civ. A. No. 20-1128 (TNM), 2022 WL 1081097 (D.D.C. Apr. 11, 2022)................8

*Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) .............................................................8-9, 11, 13, 22

*McGehee v. CIA*,
    697 F.2d 1095 (D.C. Cir. 1983) ..................................................................................2

*Mohawk Industries, Inc. v. Carpenter*,
    558 U.S. 100 (2009)....................................................................................................3

**Cases (cont.)**

*Muro v. Target Corp.*,
  250 F.R.D. 350 (N.D. Ill. 2007) ................................................................... 5

*Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*,
  844 F.3d 246 (D.C. Cir. 2016) ..................................................................... 21

*Nat'l Sec. Archive v. CIA*,
  752 F.3d 460 (D.C. Cir. 2014) ..................................................................... 2

*Petro. Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ............................................................... 14, 15

*Porup v. CIA*,
  997 F.3d 1224 (D.C. Cir. 2021) ................................................................... 22

*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ............................................ 3, 9-10, 12-13

*Rosenberg v. Dep't of Def.*,
  442 F. Supp. 3d 240 (D.D.C. 2020) ............................................................. 2

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
  600 F.3d 612 (7th Cir. 2010) ....................................................................... 6

*Sarras v. Dep't of Just.*,
  Civ. A. No. 19-0861 (CRC), 2023 WL 6294164 (D.D.C. Sept. 27, 2023) ........................ 11, 12

*Selgjekaj v. Exec. Off. of U.S. Att'ys*,
  Civ. A. No. 20-2145 (CRC), 2021 WL 3472437 (D.D.C. Aug. 6, 2021) ................................ 8

*Tobias v. Dep't of the Interior*,
  Civ. A. No. 18-1368 (CJN), 2021 WL 4262488 (D.D.C. Sept. 20, 2021) ................................ 7

*Town of Norfolk v. Army Corps of Eng'rs*,
  968 F.2d 1438 (1st Cir. 1992) ....................................................................... 6

*United States v. Jicarilla Apache Nation*,
  564 U.S. 162 (2011) ................................................................................. 3

*United States v. Philip Morris, Inc.*,
  314 F.3d 612 (D.C. Cir. 2003) ................................................................... 3, 7

*United States v. Zolin*,
  491 U.S. 554 (1989) ................................................................................. 3

**Cases (cont.)**

*Weisberg v. Dep't of Just.*,
  627 F.2d 365 (D.C. Cir. 1980) ................................................................................................ 2

Statutes

5 U.S.C. § 552 ................................................................................................................................ 1

5 U.S.C. § 552(a)(3)(A) .................................................................................................................. 2

5 U.S.C. § 552(a)(8)(A)(i) .............................................................................................................. 2

Rules

Fed. R. Civ. P. 26(b)(3)(A) ............................................................................................................ 4

Fed. R. Civ. P. 56(a) ...................................................................................................................... 1

Pursuant to Federal Rule of Civil Procedure 56, Defendant Department of Homeland Security, by and through the undersigned counsel, respectfully files this memorandum of points and authorities in support of its motion for summary judgment.

## BACKGROUND

Documented describes itself as "a nonprofit news organization devoted solely to covering New York City's immigrants and the policies that affect their lives." Compl. ¶ 4, ECF No. 1. On January 11, 2021, Documented's co-executive director submitted, on its behalf, a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for "All Secretary's Decision Papers issued or published on or after January 1, 2017 to present." *Id.* ¶¶ 6-7. The request further specified, "While conducting your search, please ensure to review Intranet Quorum and any other Enterprise Correspondence Tracking Software used by the Office of the Executive Secretariat during this period of time." *Id.* ¶ 8. Documented filed this action on December 1, 2021. *See generally id.*

After nearly two years of production and negotiation, the parties narrowed their dispute to certain redactions under Exemption 5 in six records: the (1) Temporary Protected Status Nicaragua Memorandum, (2) Temporary Protected Status Honduras Memorandum, (3) Memorandum Regarding Honduras's Temporary Protected Status, (4) Memorandum Regarding Haiti's Temporary Protected Status, (5) Memorandum on Migrant Protection Protocols Immigration Hearing Facilities, and (6) Somalia's Temporary Protected Status Memorandum. Jt. Status Rpt. at 1 (Nov. 20, 2023), ECF No. 17. The parties informed the Court that Documented "does not dispute any other redactions or withholdings in [the Department's] productions," and "also does not dispute the reasonableness or adequacy of [the Department's] search for responsive records." *Id.*

## LEGAL STANDARDS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "FOIA cases are typically

and appropriately decided on motions for summary judgment." *Benjamin v. Dep't of State*, 178 F. Supp. 3d 1, 3 (D.D.C. 2016), *aff'd*, No. 16-5175 2017 WL 160801 (D.C. Cir. Jan. 3, 2017) (internal quotation marks omitted). An agency is entitled to summary judgment as to its FOIA withholdings case if it shows that no material facts are disputed and each responsive record has been produced or is exempt from disclosure. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). An agency may rely on reasonably detailed, non-conclusory declarations to meet this burden. *See McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

## ARGUMENT

FOIA generally requires a federal agency, "upon any request for records" that "reasonably describes such records" and conforms to applicable agency rules, to "make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). An agency need not, however, produce a responsive record if two conditions obtain. First, the record must fall within the scope of a FOIA exemption. *Id.* § 552(b). Here, the only exemption that the Department invokes to the records still being challenged is Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." *Id.* § 552(b)(5). Exemption 5 thus "encompasses the privileges that the Government could assert in civil litigation against a private litigant, such as the attorney-client privilege, the attorney work product privilege, . . . and the deliberative process privilege." *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014).

Second, an agency must establish that either (1) "disclosure is prohibited by law" or (2) it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i). "The degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020). "In some instances, the withheld information may be so obviously sensitive . . . that a simple statement

illustrating why the privilege applies and identifying the harm likely to result from release may be enough." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 360 (D.C. Cir. 2021).

As explained below, the Department properly relied on Exemption 5 to withhold records under the attorney-client privilege, work product doctrine, and deliberative process privilege.

## I.    The Department Properly Invoked the Attorney-Client Privilege and Work Product Doctrine to Withhold Memoranda on Honduras and Nicaragua's Status Designations

"The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." *In re Lindsey*, 158 F.3d 1263, 1267 (D.C. Cir. 1998). It "is the oldest of the privileges for confidential communications known to the common law" and "among . . . the most established" of them. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165, 169 (2011) (quotation marks omitted). "The attorney-client privilege rests at the center of our adversary system." *United States v. Philip Morris, Inc.*, 314 F.3d 612, 618 (D.C. Cir. 2003);[1] *see also United States v. Zolin*, 491 U.S. 554, 562 (1989) (recognizing "the centrality of open client and attorney communication to the proper functioning of our adversary system of justice"). "The privilege promotes sound legal advocacy by ensuring that [an attorney] knows all the information necessary to represent his client." *Id.* "In modern society, legal advice and assistance is often essential." *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997). "To provide effective representation, attorneys need full and frank disclosures from their clients." *Id.* (quotation marks omitted). "Clients, it has been thought, might not be forthright if their lawyers could be turned into witnesses against them or if they could be forced to disclose their conversations with their lawyers." *Id.*

---

[1]    While *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 105 n.1 (2009), later abrogated *Philip Morris* insofar as the latter held that orders requiring disclosure of attorney-client materials qualify for interlocutory appeal, it did not disturb the aspect of *Philip Morris* that is relevant here.

The work product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "[I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Id.* at 511. "The work product protection is broader than the attorney-client privilege in that it is not restricted solely to confidential communications between an attorney and client." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015). But "[i]t is narrower [ ] insofar as the doctrine protects only work performed in anticipation of litigation or for trial." *Id.* "A document prepared as work product for one lawsuit will retain its protected status even in subsequent, unrelated litigation." *Id.*

The Department properly invoked the attorney-client privilege and work product doctrine to withhold portions of certain "memoranda from the Acting General Counsel to the Acting Secretary advising the Acting Secretary regarding the termination of Nicaragua's Temporary Protected Status [("Status")] designation and the extension of the Honduras' [Status] designation." Pavlik-Keenan Decl. ¶ 9. Both the attorney-client privilege and work product doctrine cover these records, and their disclosure foreseeably would harm interests the privilege and doctrine protect.

A.    **Both the Attorney-Client Privilege and the Work Product Doctrine Protect the Memoranda**

At the threshold, the memoranda "were prepared in reasonable anticipation of litigation," as the work product doctrine requires, because they were "created after a dispute arose and existed solely to assure compliance with discovery obligations that might arise in litigation and reflects an attorney's legal opinion." Pavlik-Keenan Decl. ¶ 10; *see also Boehringer Ingelheim*, 778 F.3d at 149. Further, "the substance of the document reflects legal advice as to what information must be preserved and in what format in anticipation of litigation." Pavlik-Keenan Decl. ¶ 10. Both the attorney-client privilege and the work product doctrine protect attorney-client communications concerning a client's document-preservation obligations. *See Jud. Watch, Inc. v. Dep't of State*, Civ. A. No. 14-1242, 2019 WL 2452325, at *5 (D.D.C. June 12, 2019) (attorney-client privilege shielded communications "concerning preservation of [client's] emails"); *Gibson v. Ford Motor Co.*, 510 F. Supp. 2d 1116, 1123 (N.D. Ga. 2007) ("document sent to Defendant's employees instructing them not to destruct certain kinds of documents required to be maintained as a result of this litigation" was "likely to constitute attorney work-product"); *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (litigation hold notices "seem to be communications of legal advice from corporate counsel to corporate employees regarding document preservation," and thus, "on their face, appear to be privileged material"); *In re eBay Seller Antitrust Litig.*, Civ. A. No. 07-1882, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (plaintiff "made an adequate showing that" document retention notices "include material protected under attorney client privilege and the work product doctrine").

The attorney-client privilege also applies for an additional reason—"[e]ach memorandum provided legal advice from the Acting General Counsel to the Acting Secretary on the decision to terminate or extend [Status] designation and the litigation risks in making that decision." Pavlik-

Keenan Decl. ¶ 10. The attorney-client privilege protects advice regarding legal risks inherent in making a given decision. *See Gen. Elec. Co. v. Johnson*, Civ. A. No. 00-2855 (JDB), 2007 WL 433095, at \*21 (D.D.C. Feb. 5, 2007) ("The remainder of the document is protected by the attorney-client privilege, since it is a communication among agency attorneys that contains legal analysis of the agency's statutory authority and potential litigation risks."); *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 454 (N.D. Ill. 2006) (conversations "about potential litigation risk and legal strategy are privileged under the attorney-client privilege"); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 670 (E.D. Mich. 1995), *aff'd*, 91 F.3d 143 (6th Cir. 1996) ("it is clear and undisputed that a privilege attaches" to litigation risk analysis document).

Further, although not dispositive, the fact that both memoranda are labeled "Privileged Attorney-Client Communication," Pavlik-Keenan Decl. ¶ 10, further reinforces the fact that they were intended to be attorney-client communications subject to the attorney-client privilege. *See Dalal v. Dep't of Just.*, 643 F. Supp. 3d 33, 64 (D.D.C. 2022) (the fact that document was "labelled 'Privileged and Confidential Attorney Work Product'" reinforced that it attorney-client privilege applied); *Jud. Watch, Inc. v. Dep't of Treasury*, 802 F. Supp. 2d 185, 200 (D.D.C. 2011) (same where document was "marked 'Privileged and Confidential'"); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 620 (7th Cir. 2010) (same for records "marked 'Privileged and Confidential,' 'Attorney-Client Communication,' and 'Attorney Work Product'"); *Town of Norfolk v. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992) (same for document marked "Attorney–Client Communication, Privileged And Confidential" in all caps).

## B.   Disclosing the Memoranda Foreseeably Would Harm Interests That Both the Attorney-Client Privilege and Work Product Doctrine Protect

Finally, releasing the memoranda foreseeably would harm interests that the attorney-client privilege and work product doctrine protect. In the attorney-client privilege context, the harm of

disclosure is virtually self-evident. *See Philip Morris*, 314 F.3d at 622 ("the general injury caused by the breach of the attorney-client privilege . . . is clear enough"); *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) ("an agency's burden under the foreseeable harm requirement" is "more easily met" under attorney-client than deliberative process privilege, given former's "prominent and sacrosanct role in the law," and "the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated . . . . [r]elease of attorney-client communications would undoubtably undermine our legal culture," as "the observance of law otherwise promoted by the privilege would be hampered during agency decisionmaking" (quotation marks omitted)); *Cayuga Nation v. Dep't of the Interior*, Civ. A. No. 20-2642 (ABJ), 2022 WL 888178, at *9 (D.D.C. Mar. 25, 2022) (disclosure's harm "apparent" because the "disclosure of privileged information is a harm in and of itself when it comes to the attorney-client relationship"); *Ecological Rights Found. v. EPA*, Civ. A. No. 19-0980 (BAH), 2021 WL 535725, at *32 (D.D.C. Feb. 13, 2021) ("When invoking the attorney-client privilege, [ ] an agency likely does not need to reach far beyond the fact of disclosure to show foreseeable harm," as "disclosure of privileged information is a harm in and of itself"); *Avila v. Dep't of State*, Civ. A. No. 17-2685 (RC), 2022 WL 2104483, at *12 (D.D.C. June 10, 2022) (breach "would jeopardize agency officials' ability to freely give and receive legal advice in its operations"); *Tobias v. Dep't of Interior*, Civ. A. No. 18-1368 (CJN), 2021 WL 4262488, at *2 (D.D.C. Sept. 20, 2021) ("So long as the agency specifically focused on the information at issue under review, and it concluded that disclosure of that information would chill future internal discussions, the court can conclude that the agency correctly understood the governing legal requirement and explained why it was met" (cleaned up)).

The harm of disclosing attorney work product likewise is virtually self-evident. *See Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, Civ. A. No. 20-1128 (TNM), 2022 WL 1081097, at *6 (D.D.C. Apr. 11, 2022) (agency showed foreseeable harm although its "explanation provide[d] little clarity," because "the context and purpose of attorney work product makes self-evident the harm from its disclosure" (quotation marks omitted)); *Selgjekaj v. Exec. Off. of U.S. Att'ys*, Civ. A. No. 20-2145 (CRC), 2021 WL 3472437, at *5 (D.D.C. Aug. 6, 2021) ("It is hardly debatable that the government's ability to prosecute [ ] cases would be impeded if its attorneys were deprived of a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories" (quotation marks omitted)); *cf. Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (in the deliberative process context, agency showed foreseeable harm where it "explained that full disclosure of the [records] would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations" (cleaned up)).

Disclosing the memoranda would have a "chilling effect on the ability of agency attorneys to effectively communicate with their agency clients and to effectively prepare to represent the agency where agency counsel reasonably anticipated any final decision would result in litigation." Pavlik-Keenan Decl. ¶ 12. Such disclosure "would inhibit the candid discussion of issues between counsel and its employees, which would compromise the ability of the [Department's] Leadership to be fully informed in order to make quality decisions about such issues, as well as assess any future litigation risks." *Id.* "Deliberations amongst agency counsel and [the Department's] Leadership regarding [Status] decisions, in the past and the future, require total candor and confidentiality." *Id.* Thus, "[d]isclosure of such communications would significantly impair the [Status] decision-making process and have a strong chilling effect." *Id.* "To properly assess [Status] designations, [Department] Leadership must feel free to receive candid assessments of the

evidence, eligibility criteria, pre-decisional policy considerations, and legal guidance when making [Status] determinations." *Id.* That is especially so given "the function of these documents," which "was to provide candid assessments to the Department's Acting Secretary from the Acting General Counsel on these [Status] determinations, which were likely significant in the final decision." *Id.* "These [Status] decisions will continue to be made in the future, and if any underlying legal analyses are to be provided to the public, it is less likely the Secretary will receive these comprehensive legal and deliberative assessments in writing, which highly impairs the decision-making process at the Department." *Id.* As such, the Department has demonstrated that the memoranda's disclosure foreseeably would harm interests that the attorney-client privilege and work product doctrine protect.

## II.      <u>The Department Properly Invoked the Deliberative Process Privilege</u>

The Department also properly withheld records under the deliberative process privilege. The deliberative process privilege covers records "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Reps. Comm.*, 3 F.4th at 357 (quotation marks omitted). The privilege "assures agency staff that they can provide their candid opinions and recommendations to decisionmakers without fear of ridicule or reprisal." *Id.* at 361. It "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options," as well as "an understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Id.* at 362. Agency officials "who expect public dissemination of their remarks may well temper candor with a concern for appearances to the detriment of the decisionmaking process." *Machado Amadis*, 971 F.3d at 371 (quotation marks omitted). As the Supreme Court has put it, the privilege "protect[s] agencies from being forced to operate in a fishbowl." *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

To fall within the privilege's scope, a record must be "both predecisional and deliberative." *Reporters Comm.*, 3 F.4th at 362. A record "is predecisional if it was generated before the agency's final decision on the matter" and "deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Id.* (cleaned up). "There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional." *Sierra Club*, 141 S. Ct. at 786. While the D.C. Circuit has not formally adopted this test, judges in this District sometimes evaluate the deliberative process privilege's applicability by looking to three factors: "(1) the deliberative process involved; (2) the role the document played in the course of the deliberative process; and (3) the nature of the decision-making authority vested in the office or person issuing the records, along with where the parties to the documents sit in the chain of command." *Khatchadourian v. Def. Intel. Agency*, 597 F. Supp. 3d 96, 115 (D.D.C. 2022).

## A.   The Department Properly Withheld a Memorandum on Migrant Protection Protocol Immigration Hearing Facilities Contracts at Two Ports of Entry

The Department established that the deliberative process privilege covers "a pre-decisional and deliberative memorandum from the Senior Office Performing the Duties of Under Secretary Office of Strategy, Policy, and Plans to the Acting Secretary regarding Migrant Protection Protocol ('Protocol') Immigration Hearing Facilities Contract[s] at two ports of entry," Pavlik-Keenan Decl. ¶ 14, and that its release foreseeably would harm interests that the privilege protects.

### 1.   The Deliberative Process Privilege Protects the Memorandum

The withheld portions of the memorandum satisfy each aspect of the privilege. First, as to the deliberative process involved, the memorandum was one part of a broader "discussion between Senior Leaders (e.g., Senior Office Performing the Duties of Under Secretary Office of Strategy, Policy, and Plans to the Acting Secretary." Pavlik-Keenan Decl. ¶ 14. Second, as to the role that the record played in the relevant deliberative process, the memorandum "served as a deliberation

with options and recommendations on" Protocol "Immigration Hearing Facilities Contract at two ports of entry." *Id.* Third, as to the nature of the decision-making authority vested in the relevant official, "the Secretary" had authority "to make his final decision on whether to extend [Protocol] Immigration Hearing Facilities Contract at two ports of entry." *Id.*; *compare Khatchadourian*, 597 F. Supp. 3d at 115. Moreover, "[t]he information withheld contained the thoughts, opinions, and pre-decisional impressions of [Department] senior leaders and staff." Pavlik-Keenan Decl. ¶ 14.

While the Department released portions of the memorandum reflecting its "final decision," it withheld those portions that consist of "recommendations and options on whether to extend those contracts and continue operations." Pavlik-Keenan Decl. ¶ 14; *see also Machado Amadis*, 971 F.3d at 370-71 (deliberative process privilege covered "line attorneys' evaluations, recommendations, discussions, and analysis which are prepared for senior-level review and decisionmaking. . . . a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment. To the contrary," the privilege "protects recommendations that are approved or disapproved without explanation" (cleaned up)); *Sarras v. Dep't of Just.*, Civ. A. No. 19-0861 (CRC), 2023 WL 6294164, at *9 (D.D.C. Sept. 27, 2023) ("[Decision-makers] did not adopt the withheld portions of [the records] as their own. For the deliberative process privilege to dissipate by virtue of an express adoption, the agency must accept the document's reasoning, not merely its conclusions." (cleaned up)).

> 2.  Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects

The Department has also shown that disclosing the memorandum foreseeably would harm interests that the privilege protects. Disclosure "would . . . inhibit the candid discussions of issues between employees," and thus "significantly impair the immigration decision-making process and have a strong chilling effect." Pavlik-Keenan Decl. ¶ 15. That is so because "deliberations amongst

and between [Department] Leadership regarding immigration related facility decisions, in the past and the future, require total candor and confidentiality." *Id.* "To properly assess immigration conditions, [Department] Leadership must feel free to receive candid assessments of the evidence and options when making immigration-related infrastructure decisions." *Id.*

The harm of disclosure is particularly foreseeable given "the function of this document," which "was to provide a direct and candid assessment, with options, to the Department's Acting Secretary from the Deputy Under Secretary for Management on issues related to immigration hearing facilities, which was likely significant in the [Acting Secretary's] final decision." Pavlik-Keenan Decl. ¶ 15. "Decisions regarding immigration hearing infrastructure will likely continue to be made in the future depending on various administration immigration priorities, and if any underlying deliberations are to be provided to the public, it is less likely the Secretary will receive these comprehensive assessments in writing, which would result in less informed decisions, and ultimately impair[ ] the decision-making process at the Department." *Id.* "Senior Leaders in the Department would no longer include underlying deliberative and pre-decisional content when preparing recommendation memos to the Secretary for consideration." *Id.*

These concerns go to the privilege's core, furnishing "reasons to foresee that" disclosure's "chilling effect [is] highly likely." *Jud. Watch, Inc. v. Dep't of Just.*, Civ. A. No. 19-0800 (TSC), 2023 WL 3055426, at *4 (D.D.C. Apr. 24, 2023); *accord Reps. Comm.*, 3 F.4th at 372 ("the sensitivity of the context in which these conversations arose as well as their subject matter, and the need for confidentiality in [the] discussions . . . together provide the particularized context for a finding of foreseeable harm"); *Formaldehyde Inst. v. Dep't of Health & Hum. Servs.*, 889 F.2d 1118, 1125 (D.C. Cir. 1989) (disclosure would chill "the candor of potential reviewers of government-submitted articles" and thus "result in the publication of inferior work"); *Jud. Watch*,

2023 WL 3055426, at *3 ("The discussion in those edits is substantive, with significant debate between the officials that drafted and reviewed it . . . . The declaration also situates the exchange of that information within the [agency's deliberative] process" (internal quotation marks omitted)).

The Department thus satisfies the foreseeable harm standard as to the memorandum. It sufficiently "articulat[ed] the connection between the information at issue—along with its place in the particular processes involved—and the chilling effect of disclosure." *Jud. Watch*, 2023 WL 3055426, at *3. *Machado Amadis*, 971 F.3d at 371 (cleaned up), is instructive—there, the agency satisfied the foreseeable harm standard when its "affidavit adequately explained that full disclosure of the [records] would discourage line attorneys from candidly discuss[ing] their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals," because "[s]uch chilling of candid advice is exactly what the privilege seeks to prevent." The D.C. Circuit recognized that the agency had not "simply rel[ied] on generalized assertions that disclosure 'could' chill deliberations," because it had (1) "specifically focused on the information at issue" in identifying the precise records that it withheld, and (2) explained "that disclosure of that information 'would' chill future internal discussions," not that it simply "could" chill such deliberations. *Id.* Here, too, the Department identified specific categories of information that it withheld under the deliberative process privilege and explained with sufficient particularity how this information's disclosure "would," not just could, chill intra-agency deliberations. Pavlik-Keenan Decl. ¶ 15. These explanations "are at least as detailed as those in *Machado Amadis*." *Jud. Watch*, 2023 WL 3055426, at *3 (quotation marks omitted).

Finally, "disclosure of this information [also] would be misleading to the public," Pavlik-Keenan Decl. ¶ 15, which likewise is a harm that the privilege was meant to prevent. *See Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 23 (D.C. Cir. 2022) (the deliberative process privilege

"protects the public from being misled by documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action" (internal quotation marks omitted)); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (same); *Reps. Comm.*, 3 F.4th at 361 (deliberative process privilege "guards against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action" (quotation marks omitted)); *Petro. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1437 n.10 (D.C. Cir. 1992) ("a subsidiary rationale" for deliberative process privilege is "risk of public confusion"). For these reasons, the Department has established that the memorandum's disclosure foreseeably would harm interests that the deliberative process privilege protects.

## B.    The Department Properly Withheld the Memoranda on Honduras and Nicaragua's Status Designations

The Department properly withheld the same portions of the memoranda withheld under the attorney-client privilege and work product doctrine, *see supra* § I, under the deliberative process privilege, as well. These portions consist of "pre-decisional and deliberative information discussing the notice that is required to be published in the Federal Register regarding the termination of Nicaragua's [Status] designation and the extension of the Honduras' [Status] designation." Pavlik -Keenan Decl. ¶ 11. They contain "discussion regarding the TPS federal register notice requirements for the Acting Secretary to consider in her decision-making process, litigation risk regarding federal register notice publication requirements, and the circulation and review process that resulted in this draft notice." *Id.*

### 1.    The Deliberative Process Privilege Protects the Memoranda

The withheld portions of the memoranda satisfy each aspect of the privilege. First, as to the deliberative process involved, the memoranda reflect "discussion between Senior Leaders (e.g.,

Senior Office Performing the Duties of Under Secretary Office of Strategy, Policy, and Plans to the Acting Secretary)." Pavlik-Keenan Decl. ¶ 11. Second, as to the role the records played in the deliberative process, the memoranda "served as a deliberation with options and recommendations on regarding the [Status] decisions and the Federal Register notice requirements." *Id.* Third, as to the nature of the decision-making authority vested in the relevant official, "the Secretary" had the authority "to make her final decision on whether to extend or terminate [Status]." *Id.*; *compare Khatchadourian*, 597 F. Supp. 3d at 115. Moreover, "[t]he information withheld contained the thoughts, opinions, and pre-decisional impressions of the [Department's] Acting General Counsel on the notice requirements and the [Status] decisions." Pavlik-Keenan Decl. ¶ 11.

2.  Disclosing the Memoranda Foreseeably Would Harm Interests That the Privilege Protects

Disclosing the memoranda foreseeably would harm interests that the deliberative process privilege protects for reasons largely similar to why it would harm interests that the attorney-client privilege and work product doctrine protect. *See supra* § I.B. Disclosure "would" have a "chilling effect on the ability of agency attorneys to effectively communicate with their agency clients and to effectively prepare to represent the agency where agency counsel reasonably anticipated any final decision would result in litigation." Pavlik-Keenan Decl. ¶ 12. It "would inhibit the candid discussion of issues between counsel and its employees, which would hinder the ability of the [Department] Leadership to be fully informed in order to make quality decisions about such issues, as well as assess any future litigation risks." *Id.* "Deliberations amongst agency counsel and [the Department's] Leadership regarding [Status] decisions, in the past and the future, require total candor and confidentiality." *Id.* "Disclosure of such communications would significantly impair the [Status] decision-making process and have a strong chilling effect." *Id.* "To properly assess [Status] designations, [Department] Leadership must feel free to receive candid assessments of the

- 15 -

evidence, eligibility criteria, and legal guidance when making [Status] determinations." *Id.* "In fact, the function of these documents was to provide candid assessments to the Department's Acting Secretary from the Acting General Counsel on these [Status] determinations, which were likely significant in the final decision." *Id.* "These [Status] decisions will continue to be made in the future, and if any underlying legal analyses are to be provided to the public, it is less likely the Secretary will receive these comprehensive legal and deliberative assessments in writing, which highly impairs the decision-making process at the Department." *Id.* Finally, "the disclosure of any advice provided by agency counsel, without the context of any final decision related to the advice, would potentially mislead the public concerning the agency's actual position." *Id.* As such, the Department has established that the memorandum's disclosure foreseeably would harm interests that the deliberative process privilege protects.

## C.     The Department Properly Withheld a Memorandum to the USCIS Director and Assistant Secretary for International Affairs From the Acting Secretary

The Department has also demonstrated that the deliberative process privilege protects "a decision memorandum from the Acting Secretary to the [U.S. Citizenship & Immigration Services ('USCIS')] Director and the Assistant Secretary for International Affairs," Pavlik-Keenan Decl. ¶ 17, and that the memorandum's release foreseeably would harm interests the privilege protects.

### 1.     The Deliberative Process Privilege Protects the Memorandum

The withheld portions of the memorandum "contained the thoughts, opinions, and pre-decisional impressions of the [Department's] Acting Secretary shared with her senior leaders," and meet each facet of the privilege. Pavlik-Keenan Decl. ¶ 17. First, the deliberative process involved is a "discussion between Senior Leaders (e.g., Acting Secretary and USCIS Director and Assistant Secretary for International Affairs)." *Id.* Second, as to the role the record played in the deliberative process, the memorandum "served as final decision; however, underlying discussion containing

- 16 -

intelligence and advice from third parties and commentary on DHS's continued relationship with the Honduras government that was not used as a basis for her decision was considered deliberative and pre-decisional and was withheld." *Id.*; *see supra* § II.A.1 (citing cases for idea that the privilege covers otherwise pre-decisional and deliberative materials decision-maker did not ultimately adopt as its own reasoning). Third, as to the nature of the decision-making authority vested in the relevant official, "the Acting Secretary" had authority "to make [a] final decision on Honduras' [Status] designation." Pavlik-Keenan Decl. ¶ 17; *compare Khatchadourian*, 597 F. Supp. 3d at 115.

      2.      Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects

Releasing these materials also foreseeably would harm interests that the privilege protects. Disclosure "would be misleading to the public, inhibit the candid discussions of issues between employees, and be detrimental to the decision-making process." Pavlik-Keenan Decl. ¶ 18. "For instance, Senior leaders, to include the Secretary, in the Department would no longer include underlying deliberative and pre-decisional content when preparing decision memoranda." *Id.* "As such, disclosure of such communications, here, would significantly impair the [Status] decision-making process and have a strong chilling effect." *Id.* "Furthermore, deliberations amongst and between [Department] Leadership and third agencies regarding [Status] decisions, in the past and the future, require total candor and confidentiality." *Id.* "To properly assess [Status] designations, [the Department's] Leadership must feel free to receive and send candid assessments of the factual evidence and eligibility criteria, which can be intertwined, when making [Status] determinations." *Id.* "In fact, the function of this document was to send a candid assessment from the Department's Acting Secretary to the Director of USCIS on [Status] determination for Honduras." *Id.* Further, "the information withheld actually notes information the Secretary considered but did not base the decision on." *Id.* "These [Status] decisions will continue to be made in the future, and if any

underlying analyses and deliberations are to be provided to the public, it is less likely the Secretary will receive and send these comprehensive assessments in writing, which would result in less informed decisions, and ultimately impairs the decision-making process at the Department." *Id.* For these reasons, the Department has established that the memorandum's disclosure foreseeably would harm interests that the deliberative process privilege protects.

### D. The Department Properly Withheld a Memorandum on Whether to Extend or Terminate Haiti's Status Designation

The Department established that the deliberative process privilege covers "a pre-decisional and deliberative memorandum from USCIS Director to the [ ] Acting Secretary to consider various options on whether to extend or terminate Haiti's designation for [Status]," Pavlik-Keenan Decl. ¶ 20, and that the memorandum's release foreseeably would harm interests the privilege protects.

#### 1.  The Deliberative Process Privilege Protects the Memorandum

The memorandum satisfies each aspect of the privilege. First, the deliberative process at issue here is a "discussion between Senior Leaders (e.g., USCIS director and Acting Secretary)." Pavlik-Keenan Decl. ¶ 20. Second, as to the record's role in that process, the memorandum "served as a deliberation with underlying facts and discussion, and options and recommendations on Haiti's [Status] designation." *Id.* Third, as to the nature of the decision-making authority vested in the relevant official, "the Secretary" had authority "to make [a] final decision on Haiti's [Status] designation." *Id.*; *compare Khatchadourian*, 597 F. Supp. 3d at 115.

#### 2.  Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects

Releasing these materials also foreseeably would harm interests that the privilege protects. Disclosure "would be misleading to the public, inhibit the candid discussions of issues between employees and Senior Leaders, and be detrimental to the decision-making process." Pavlik-Keenan Decl. ¶ 20. "For instance, senior leaders in the Department would no longer include

underlying deliberative and pre-decisional content when preparing recommendation memos to the Secretary for consideration." *Id.* "Deliberations amongst and between [Department] Leadership regarding [Status] decisions, in the past and the future, require total candor and confidentiality." *Id.* "As such, disclosure of such communications [ ] would significantly impair [this] decision-making process and have a strong chilling effect." *Id.* "Furthermore, deliberations amongst and between [Department] Leadership regarding [such] decisions, in the past and the future, require total candor and confidentiality." *Id.* "To properly assess [Status] designations, [the Department's] Leadership must feel free to receive candid assessments of the factual evidence and eligibility criteria, which can be intertwined, when making [the] determinations." *Id.* "In fact, the function of this document was to provide a direct and candid assessment to the Department's Acting Secretary from the USCIS Director on the Haiti [Status] determination, which was likely significant in the Acting Secretary's final decision." *Id.* "These [Status] decisions will continue to be made in the future, and if any underlying deliberative analyses are to be provided to the public, it is less likely the Secretary will receive these comprehensive assessments in writing, which would result in less informed decisions, and ultimately impairs the decision-making process at the Department." *Id.* For these reasons, the Department has established that the memorandum's disclosure foreseeably would harm interests that the deliberative process privilege protects.

### E. The Department Properly Withheld a Memorandum on Whether to Extend or Terminate Somalia's Status Designation

Finally, the Department showed that the privilege covers "a pre-decisional and deliberative memorandum from the USCIS Deputy Director to the [ ] Acting Secretary to consider various options on whether to extend or terminate Somalia's [Status] designation," Pavlik-Keenan Decl. ¶ 23, and that the memorandum's release foreseeably would harm interests the privilege protects.

1.      The Deliberative Process Privilege Protects the Memorandum

The memorandum satisfies each aspect of the privilege. First, as to the deliberative process at issue, the memorandum was part of a "discussion between Senior Leaders (e.g., USCIS director and Acting Secretary)." Pavlik-Keenan Decl. ¶ 23.  Second, as to the record's role in that process, the memorandum "served as a deliberation with underlying facts and discussion, and options and recommendations on Somalia's [Status] designation." *Id.* Third, as to the nature of the relevant official's decision-making authority, "the Secretary" had authority "to make [a] final decision on Somalia's [Status] designation." *Id.*; *compare Khatchadourian*, 597 F. Supp. 3d at 115.

2.      Disclosing the Memorandum Foreseeably Would Harm Interests That the Privilege Protects

Disclosing the memorandum also foreseeably would harm interests that the privilege protects. Disclosure "would be misleading to the public, inhibit the candid discussions of issues between employees and Senior Leaders, and be detrimental to the decision-making process." Pavlik-Keenan Decl. ¶ 24. "For instance, senior leaders in the Department would no longer include underlying deliberative and pre-decisional content when preparing recommendation memos to the Secretary for consideration." *Id.* "As such, disclosure of such communications, here, would significantly impair the [Status] decision-making process and have a strong chilling effect." *Id.* "Furthermore, deliberations amongst and between [the Department's] Leadership regarding [Status] decisions, in the past and the future, require total candor and confidentiality." *Id.* "To properly assess [Status] designations, [the Department's] Leadership must feel free to receive candid assessments of the factual evidence and eligibility criteria, which can be intertwined, when making [Status] determinations." *Id.* "In fact, the function of this document was to provide a direct and candid assessment to the Department's Acting Secretary from the USCIS Deputy Directory on the Somalia [Status] determination, which was likely significant in the final decision." *Id.*

"These [Status] decisions will continue to be made in the future, and if any underlying deliberative analyses are to be provided to the public, it is less likely the Secretary will receive these comprehensive assessments in writing, which would result in less informed decisions, and ultimately impairs the decision-making process at the Department." *Id.* For all these reasons, disclosure foreseeably would harm interests that the deliberative process privilege protects.

## III.   The Department Released All Non-Exempt, Reasonably Segregable Materials

An agency must take reasonable steps to segregate and release all non-exempt, reasonably segregable portions of responsive records. 5 U.S.C. §§ 552(a)(8)(A)(ii)(I), 552(b). Non-exempt portions of responsive records need not be produced, however, if "they are inextricably intertwined with exempt portions." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 583 (D.C. Cir. 2020) (quotation marks omitted). Under FOIA, segregability analysis "does not call for parsing [a record] line-by-line or segregating material dispersed throughout the document. Instead, the emphasis is on segregation of non-exempt material found in logically divisible sections." *Nat'l Ass'n of Crim. Def. Lawyers v. Dep't of Just.*, 844 F.3d 246, 257 (D.C. Cir. 2016) (cleaned up). "When an agency demonstrates that records contain exempt information, as the [Department] has done, it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material." *Flyers Rts. Educ. Fund, Inc. v. FAA*, 71 F.4th 1051, 1058 (D.C. Cir. 2023) (cleaned up). The requester may "rebut this presumption," but only if it offers "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." *Id.* (cleaned up).

Here, "[a]ll the information withheld" in the records at issue have "been carefully reviewed to ensure that the Department has disclosed all reasonably segregable, non-exempt information" to Documented. Pavlik-Keenan Decl. ¶¶ 13, 16, 19, 22, 25. The Department "conducted a page-by-page, line-by-line review of all responsive information contained in [the records at issue] and has released all reasonably segregable, non-exempt information." *Id.* As described in the attached

declaration, the Department identified numerous categories of non-exempt, reasonably segregable information within the withheld records, and produced this information to Documented. *See id.* As such, the Department has produced all reasonably segregable, non-exempt information. *See Porup v. CIA*, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (agency satisfied its segregability obligation where it had "attested that [it] had conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information within responsive records," "determining that no additional information may be released without divulging information that falls within the scope of one or more FOIA exemptions" (cleaned up)); *Machado Amadis*, 971 F.3d at 371-72 (agency "appropriately segregated exempt and non-exempt portions" of responsive records where it had "conducted a line-by-line review, determined that some non-exempt, factual information within [the records] could be segregated for release, and redacted only" exempt information (cleaned up)). As the withheld records contain exempt information, there is "a presumption that [the Department] complied with the obligation to disclose reasonably segregable material," and Documented can offer no "evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation," as necessary to "rebut this presumption." *Flyers Rts.*, 71 F.4th at 1058.

\*     \*     \*

**CONCLUSION**

This Court should grant the Department summary judgment.

Dated: February 7, 2024        Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ _____
    BRADLEY G. SILVERMAN
    D.C. Bar #1531664
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2575
    bradley.silverman@usdoj.gov

*Attorneys for the United States of America*