# United States District Court
## for the District of Columbia

|  |  |
|---|---|
| **Documented,**<br><br>                              *Plaintiff,*<br>v.<br><br>**Department of Homeland Security,**<br><br>                              *Defendant.* | Civil Action No. 21-cv-3142 (RCL) |

## Plaintiff Documented's Opposition to Homeland Security's Motion for Summary Judgment and Cross-Motion for Summary Judgment

This Court should not only deny the Government's motion for summary judgment, but it should also grant Plaintiff Documented's cross motion for summary judgment. All the documents at issue should be released in full.

### Factual and Procedural History

The factual background is largely as the Defendant has described it. Documented is a non-profit news site devoted solely to covering New York City's immigrants and the policies that affect their lives. Max Siegelbaum, Documented's co-executive director, submitted a FOIA request in

1

January of 2021. On behalf of the organization, he requested "All Secretary's Decision Papers issued or published on or after January 1, 2017 to present."

Redactions under FOIA Exemption 5 in only six records remain at issue. The specific privileges asserted vary by document and will be discussed below. The documents at issue are:

1. Memorandum for the Acting Secretary – USCIS Notice: Termination of the Designation of Nicaragua for Temporary Protected Status (Nov. 30, 2017) ("Nicaragua TPS Memo"), attached as Exhibit 1;

2. Memorandum for the Acting Secretary – USCIS Notice: Extension of the Designation of Honduras for Temporary Protected Status (Nov. 30, 2017) ("Honduras TPS Memo"), attached as Exhibit 2[1];

3. Memorandum for USCIS Director L. Francis Cissna and Assistant Secretary of International Affairs James D. Nealon- Honduras' Designation for Temporary Protected Status (Nov. 6, 2017) ("Duke's Honduras Memo), attached as Exhibit 3[2];

---

[1] The Vaughn Index identifies the Honduras TPS Memo as Bates numbers 8-10. This is likely a reflection of how the parties referred to redactions at issue during negotiations. The exhibit includes page 11, for the sake of providing the whole document. The redactions on that page are not at issue.

[2] The Vaughn Index identifies the Duke Honduras Memo as Bates number 62. The exhibit includes page 63, for the sake of providing the whole document. There are no redactions on that page.

4. Memorandum for the Secretary - Haiti's Designation of Temporary Protected Status (Nov. 3, 2017) (Haiti TPS Memo), attached as Exhibit 4[3];

5. Memorandum for the Acting Secretary - Migrant Protection Protocols Immigration Hearing Facilities Contract Status (Dec. 16, 2020) ("MPP Memo"), attached as Exhibit 5; and

6. Memorandum for the Acting Secretary - Somalia's Designation for Temporary Protected Status (Dec. 5, 2019) ("Somalia TPS Memo"), attached as Exhibit 6.

Jt. Status Rpt. at 1 (Nov. 20, 2023), [ECF No. 17].

By way of factual context, a country may be designated for Temporary Protected Status by the Secretary of Homeland Security due to conditions in the country that temporarily prevent the country's nationals from returning safely, or where the country cannot adequately handle the return of its nationals. 8 U.S.C. § 1254a. The Migrant Protection Protocols—commonly called the "Remain in Mexico" program—was a Trump administration program in which asylum seekers were sent from the U.S. to Mexico to await a court hearing. This program has ended, and Mexico has indicated that it will not cooperate in any reinstatement. *See* Armando Garcia and Quinn Owen, *ABC News*, "Mexico rejects any effort to reinstate 'remain in Mexico' policy for asylum-seekers," (Feb. 7, 2023), https://abcnews.go.com/Politics/mexico-rejects-effort-reinstate-remain-mexico-policy-asylum/story?id=96939554.

---

[3] Without prejudice to either party's ability to raise issues related to the production and redaction of this record, Documented represents to this Court that the parties believe that within a very short time-frame they will be able to come to an agreement as to this record.

**Legal Standards**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A grant of summary judgment is appropriate when the pleadings and evidence demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Unlike in a typical summary judgment motion, in FOIA it is an agency's burden to prove that it has complied with its obligations under FOIA. *See U.S. DOJ v. Tax Analysts*, 492 U.S. 136, 142 n.3 (1989). To prevail, a Government agency must meet its burden of proving that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Nat'l Cable Television Ass'n v. Fed. Commc'ns Com.*, 479 F.2d 183, 186 (D.C. Cir. 1973).

To determine whether an agency has carried its burden, a court may rely on agency affidavits and declarations that demonstrate the applicability of any claimed exemptions. *See Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

**Argument**

**I.      The Government must meet a high bar to withhold any requested record.**

FOIA encompasses a presumption of openness that is the keystone of a functioning democracy. *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 172 (2004). To add more heft to that presumption, in 2016, Congress added the "foreseeable harm" standard. *See* FOIA Improvement Act § 2, 130 Stat. at 539 (codified at 5 U.S.C.S. § 552(a)(8)(A)(i)). This addition to FOIA mandates that, to withhold any potentially releasable record, the Government must demonstrate the "basis and likelihood" of any purported harms that might come from release. *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021). The Government "cannot rely on mere speculative or abstract fears, or fear of embarrassment." *Id.* (cleaned up). The foreseen harms must be more than "generalized assertions." *Id.* (cleaned up). This requirement "imposes an independent and meaningful burden on agencies." *Id.* at 369. This foreseeable harm requirement is an overlay to any claimed FOIA exemption, including the one here—Exemption 5.

Under Exemption 5, records may be exempt from disclosure when they are "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption "incorporates the privileges that the Government may claim when litigating against a private party." *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 898 (D.C. Cir. 2015). These privileges include the deliberative process privilege, the attorney-client privilege, and the work-product privilege. *Id.*

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975) (cleaned up). It does not protect any included factual information. *EPA v. Mink*, 410 U.S. 73, 87-88 (1973) ("memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government"). Such records must be "both pre-decisional and deliberative." *Abtew*, 808 F.3d at 899. A record "is deliberative when it is prepared to help the agency formulate its position, and it reflects the give-and-take of the consultative process." *Reporters Comm. for Freedom of the Press*, 3 F.4th at 362 (cleaned up).

Attorney-client privilege protects confidential communications between clients and lawyers "to encourage full and frank communication between" them to "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It protects information shared by a client with an attorney to receive legal advice, and any written communication back to the client. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 862 (D.C. Cir. 1980). Information that is obtained from third parties is not protected if "no new or confidential information *concerning the Agency* is imparted." *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983)(emphasis in original). "Likewise, the legal conclusions of the agency or its lawyers are not protected if they rest on such third-party information." *GE v. Johnson*, Civil Action No. 00-2855 (JDB), 2006 U.S. Dist. LEXIS 64907, at *44-45 (D.D.C. Sept. 12, 2006). The attorney-client privilege disappears if

the communication is adopted as agency policy. *Id.* "[T]he attorney-client privilege may not be invoked to protect a document adopted as, or incorporated by reference into, an agency's policy." *Nat'l Council of La. Raza v. DOJ*, 411 F.3d 350, 360 (2d Cir. 2005).

The attorney work-product privilege, unlike the attorney-client privilege, only attaches once there is "some articulable claim, likely to lead to litigation." 214 *Coastal States Gas Corp.*, 617 F.2d at 865. A court must determine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *United States v. Deloitte L.L.P.*, 610 F.3d 129, 137 (D.C. Cir. 2010). "Where a document would have been created in substantially similar form regardless of the litigation, work product protection is not available." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (cleaned up).

**II.     None of the records at issue may be withheld.**

The only exemption at issue for all the documents is FOIA Exemption 5, although the Government has asserted that specific privileges apply to each document. Yes, these documents are obviously inter-agency records. But most of the asserted Exemption 5 privileges do not apply to these records. And where they might, the Government has not sufficiently described any foreseeable harm that would come from the release of these records.

Because the five documents that relate to Temporary Protected Status for various countries all have similar contents, a similar analysis is required for each. They will be addressed as a group first, noting any concern specific to each record. Then, this brief will turn to the document regarding the Migrant Protection Protocols.

### A. The five TPS memoranda must be released.

#### 1. Attorney-client privilege does not apply to the Somalia TPS Memo.

Although not mentioned in the Department's brief, the *Vaughn* Index states that one of the reasons for withholding at least part of the Somalia TPS Memo is attorney-client privilege. *Vaughn* Index [ECF 22-4], 8. The author of this memorandum, Mark R. Koumans, is not a lawyer. *See* Mark R. Koumans, LinkedIn, https://www.linkedin.com/in/mark-koumans-12605aa/. Documents he authored cannot be shielded by this privilege.

Two other documents—the Nicaragua and Honduras TPS Memos—do fall within the attorney-client privilege, but as discussed below in Section II A 5, they still must be released to Documented because there is no foreseeable harm that would flow from their release.

#### 2. The work-product privilege is inapplicable as these memos were not prepared for litigation.

The Government has asserted that the Nicaragua and Honduras TPS Memos are covered by the work-product privilege. But that is incorrect.

To be considered privileged attorney work-product, a document must be prepared in anticipation of litigation. *Boehringer Ingelheim Pharms., Inc.*, 778 F.3d at 149. This Circuit employs a "because of" test—that is, a document is privileged if it would not have been created but for impending litigation. *Id.* (citing U*nited States v. Deloitte L.L.P.,* 610 F.3d 129, 137 (D.C. Cir. 2010) and 8 Charles Alan Wright Et Al., *Federal Practice & Procedure § 2024*, at 502 (3d ed. 2010)). The general worry that anything the government does might become the subject of litigation is not enough. "While it may be true that the prospect of future litigation touches virtually any object of

8

a[n agency] attorney's attention, if the agency were allowed to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *Senate of P.R. ex rel. Judiciary Comm. v. U.S. DOJ*, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (cleaned up). Rather, for the privilege to apply, the attorney who prepared the document must held an objectively reasonable belief that "litigation was a real possibility." *Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). There must have already arisen "some articulable claim, likely to lead to litigation." *Coastal States Gas Corp.*, 617 F.2d at 865.

All designations of Temporary Protected Status have expiration dates and must be periodically reviewed. 8 U.S.C. § 1254a(b)(2)-(3). Memorandum exploring that statutorily required process cannot meet the "because of" test for being protected as attorney work-product. They cannot be shielded from release under that privilege.

### 3. The Duke's Honduras Memo is not deliberative.

Of all the TPS-related memoranda, the Duke's Honduras Memo (Exhibit 3) is on its face not deliberative. It is a memorandum from Acting Secretary of Homeland Security Duke to the Director of the U.S. Citizen and Immigration Services and the Assistant Secretary of Homeland Security for International Affairs. The released first paragraph of this memorandum explains that Acting Secretary Duke concluded she needed more time to assess the correct action regarding the Honduras TPS decision. It is key that this document flows from a superior to her subordinates. Deliberative documents suggesting policy decisions usually flow upward. *Brinton v. Dep't of State*,

636 F.2d 600, 605 (D.C. Cir. 1980). When documents flow downward, as here, it is usually superiors providing direction to their subordinates.

Also important is the revelation that this redaction covers information received from unknown third parties. *See* Def's. Mem. in Support of Mot. for Sum. Jmt [ECF 22-1] (Def's. Mem.), 17. The deliberative process privilege only protects discussions internal to the government. *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S. Ct. 1060, 1065 (2001). The Government has not provided enough information to establish that this is the case here. *See Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 238 (D.D.C. 2013) (Defendants must point to the identities of the agency personnel and other individuals involved).

Because this memo is not deliberative and because no other privilege was asserted, it should be released to Documented.

### 4. For all the TPS Memos, purely factual information should be unredacted.

The Government has asserted the deliberative process privilege for all five TPS Memos. Although the memoranda (other than the Duke's Honduras Memo) do appear to be predecisional, much of the redacted information likely is factual, not deliberative, and therefore not shielded from disclosure. "Agencies must disclose those portions of predecisional and deliberative documents that contain factual information that does not inevitably reveal the government's deliberations." *Reporters Comm. for Freedom of the Press*, 3 F.4th at 366 (cleaned up). The Government may redact information under the deliberative process privilege only if "the

selection or organization of facts is part of an agency's deliberative process." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513 (D.C. Cir. 2011) (cleaned up).

It appears that the Haiti TPS Memo was previously filed by the Department of Homeland Security in its unredacted form in *Ramos v. Nielsen*, 3:18-cv-1554 (N.D. Cal) [ECF 113-1] 15-21, attached at Exhibit 7. In this unredacted version, most of the memorandum recites the history of Haiti's TPS designation, the well-known disaster that was the 2010 earthquake, public information about the then-current country conditions, and the options to terminate or extend the TPS designation that then faced the Secretary Homeland Security. This sort of information is largely factual. One can infer that the information contained in the other redacted records is similar.

Such information about the safety of these five countries or information about the history of their TPS designations would not reflect deliberation. Any such information contained in these memoranda should be released.

**5. There is no genuine foreseeable harm from the release of any of these memos.**

As discussed above in Section I, FOIA requires that the Government establish a concrete, foreseeable harm that would stem from release of a record to withhold it from a requestor. 5 U.S.C. § 552(a)(8)(A)(i). This FOIA requirement was enacted because "Congress was particularly concerned with increasing agency overuse and abuse of Exemption 5 and the deliberative process privilege." *Reporters Comm. for Freedom of the Press*, 3 F.4th at 369.

In requiring the Government to set out the connection between the potential release and some concrete, non-speculative harm that might come from it, the D.C. Circuit has emphasized

11

that the Government must make a specific showing to carry its burden. "The significance of agency affidavits in a FOIA case cannot be underestimated." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Just.,* 45 F.4th 963, 977 (D.C. Cir. 2022) (quoting King *v. U.S. Dep't of Just., 83*0 F.2d 210, 218 (D.C. Cir. 1987)). Affidavits must contain specificity, because a "requester's lack of knowledge seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Citizens for Responsibility & Ethics in Wash. v. U.S. DOJ, 45* F.4th 963, 977 (2022) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973)). Specificity helps somewhat correct that asymmetry of information, even where a requester cannot see the underlying records. *Id.*

Here, the proffered harms are the "chilling effect" on agency discussions, the impairment of the need for "total candor and confidentiality," and the potential to "mislead the public concerning the agency's actual position." *See* Def's Mem., 8-20.

These sorts of generic restatements of the purpose of the FOIA exemptions not sufficient. The foreseeable harm requirement is not "a game of 'Mad Libs'" where the Government "fill[s] in the blanks with the name of the agency and the things that it does." *Nat'l Pub. Radio, Inc. v. U.S. Dep't of Homeland Sec.*, No. 1:20-cv-2468-RCL, 2022 U.S. Dist. LEXIS 176411, at *23 (D.D.C. Sept. 28, 2022). While privileges exist under Exemption 5, "the Court must give meaning to the requirement, enacted by Congress after decades of evolving FOIA jurisprudence, that the agency articulate why *this* disclosure would be *particularly* harmful" *Id.* (emphasis in original). To do otherwise would be to "nullify the FOIA Improvement Act by allowing an agency

to bypass its harm requirement." *Colo. Wild Pub. Lands v. U.S. Forest Serv.*, No. 21-cv-2802 (CRC), 2023 U.S. Dist. LEXIS 160540, at *26 (D.D.C. Sept. 11, 2023).

The claims of foreseeable harm ring especially hollow here. These particular TPS designations became the subject of extensive litigation: *Ramos v. Nielsen*, 3:18-cv-1554 (N.D. Cal), *Ramos v. Mayorkas*, 18-16981 (9th Cir).[4] Ultimately, the litigation was resolved when a new administration made a clear policy change published in the Federal Register and the case was therefore dismissed as moot. *See* Order Granting Defendants' Motion to Dismiss, *Ramos v. Nielsen*, 3:18-cv-1554 (N.D. Cal) (Dec. 28, 2023) [ECF 222].

The *Ramos* litigation and the facts revealed during its course have been the subject of extensive news coverage. *See, e.g.,* Farida Jhabvala Romero, *The World*, "California teen leads lawsuit to keep hundreds of thousands of immigrants in US," ( Jan. 11, 2019), https://theworld.org/stories/2019-01-11/california-teen-leads-lawsuit-keep-hundreds-thousands-immigrants-us; Gwen Aviles, *NBC News*, "Children of TPS holders fight for their parents' protection in court," (Aug. 14, 2019), https://nbcnews.com/news/latino/children-tps-holders-fight-their-parents-protection-court-n1042421; Nicole Narea, *Vox*, "Exclusive: State Department officials warned Trump not to revoke protections for immigrants," https://www.vox.com/policy-and-politics/2019/11/7/20950689/trump-tps-temporary-protected-status-el-salvador-haiti-honduras-state-department-report-senate; and Marcela Valdes, *New York Times Magazine*, "Their Lawsuit Prevented 400,000 Deportations. Now It's Biden's Call,"

---

[4] That these decisions were litigated does not change the work-product analysis outlined in Section II A 2. The documents were not prepared *in anticipation* of litigation.

https://www.nytimes.com/2021/04/07/magazine/immigration-el-salvador.html. The Plaintiff Documented covered related litigation of the Haiti TPS decision. *See* Filipe De la Hoz, *Documented*, "Trump Administration May Have Violated Law in Ending TPS for Haitians," (Jan. 9, 2019), https://documentedny.com/2019/01/09/trump-administration-may-have-violated-law-in-ending-tps-for-haitians/.

Even more importantly, the administrative record submitted by Defendant Department of Homeland Security and the discovery materials in *Ramos* publicized much of what is likely contained in the documents at issue in addition to the entire Haiti TPS Memo. Documented asks the Court to take judicial notice of the extensive record in the *Ramos* dockets, including:

- The administrative records for the Nicaragua TPS decision, *Ramos v. Nielsen*, [ECF 112];

- The administrative records for the Haiti TPS decision, *Ramos v. Nielsen*, [ECF 113];

- Memorandum for the Deputy Chief of Staff: TPS Recommendations for El Salvador, Honduras, and Nicaragua, (October 31, 2017), *Ramos v. Nielsen*, [ECF 122, Exhibit 62];

- Honduras: Temporary Protected Status Recommendation (June 29, 2017), [ECF 122, Exhibit 69];

- Temporary Protected Status Briefing (May 19, 2017), [ECF 122, attachment to Exhibit 13] (discussing Haiti, Honduras, Nicaragua and Somalia TPS); and

- The partial transcript of the 30(b)(6) deposition of the U.S. Department of Homeland Security (Aug. 3, 2018), [ECF 122, attachment to Exhibit 18].

As the New York Times summarized, discovery in that litigation "revealed how Trump officials disregarded the recommendations of America's own foreign ambassadors as well as the advice of senior officials in the State Department." Marcela Valdes, *New York Times Magazine*, "Their Lawsuit Prevented 400,000 Deportations. Now It's Biden's Call," https://www.nytimes.com/2021/04/07/magazine/immigration-el-salvador.html.

Quite simply, the machinations underlying these TPS decisions have already been thoroughly discussed in public. There is no harm to come from releasing any of these related documents. They should be released in full to Documented.

**B. The memorandum on migrant protocols should also be released in full.**

The MPP Memo is the sole record not directly related to TPS decisions. Two of its paragraphs have been redacted. From the unredacted information, this document discusses what to do with the processing facilities that had been used for hearings during the Trump administration's Migrant Protection Protocols, commonly known as the "Remain in Mexico" rules for immigrants and asylum seekers. *See* Ex. 5, p. 1.

The MPP rules forced over 65,000 non-Mexican asylum seekers to wait across the border in Mexico for dates to present their cases in hearing locations on the American side of the border. *See* Sophia Ahmed, *Reuters*, "Explainer: What is the Trump-era 'remain in Mexico' program the Supreme Court said Biden can end?" https://www.reuters.com/world/us/what-is-trump-era-remain-mexico-program-supreme-court-said-biden-can-end-2022-06-30/. With the coming of the COVID-19 pandemic, the Trump administration then blocked all entry from Mexico. *See, generally*, *Huisha-Huisha v. Mayorkas*, 642 F. Supp. 3d 1, 10-12 (D.D.C. 2022) (explaining

administrative history of the block). With the suspension of all entry from Mexico and therefore all immigration hearings, contracted hearing facilities were placed into "warm status," that is closed but still theoretically operational if needed. *See* Ex. 5, p.1. When the contracts came to their end date, the Department of Homeland Security had to decide what to do. *See id*.

The two redacted portions of the MPP Memo describe what available courses of action existed to deal with the shuttered facilities that had previously been used to process migrants, and the signature level justification.

### 1. The signature level justification paragraph is not deliberative.

This redacted paragraph should explain why this decision was legally required to be made at the Secretary level and therefore required the signature of Acting Secretary Wolf. *See* DHS Action [or Decision] Memo Template, https://www.dhs.gov/sites/default/files/2022-03/Action%20Memo%20Template.pdf. ("If the memo is requesting Secretary review/decision please explain why the decision must be made at this level (statutory/congressional requirement, condition of policy directive, etc.) or indicate that the signature level may be delegated to another DHS official."). This paragraph is a quotidian explanation of the existing law. It is quintessentially not deliberative.

### 2. There is no harm that could come from the release of the options paragraph.

First, any factual information must be unredacted for the reasons laid out in Section II A 4. "Purely factual material usually cannot be withheld under Exemption 5 unless it reflects an

exercise of discretion and judgment calls." *Ancient Coin Collectors Guild*, 641 F.3d at 513 (cleaned up).

Second, and more pointedly, there can be no genuine foreseeable harm from the release of this information. There were only a few potential courses of action—let the contracts for the buildings expire or negotiate extensions to keep the buildings available if they were needed. Contrary to the Government's claims, Def's Mot, 13, no member of the public will be misled by the release of that paragraph. What could be the confusion created by listing the obviously available options for facilities management?

The Remain in Mexico policy has ended. There are no plans to reinstate it. And there is no believable possibility that Homeland Security leaders will be inhibited from suggesting sensible financial decisions or "no longer prepare recommendation memos to the Secretary," if this document is released in full. Def's *Vaughn* Index [ECF 22-4], 6. These formulaic excuses should not prevail. "A perfunctory statement that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information between senior leaders within and outside of the agency will not suffice." *Reporters Comm. for Freedom of the Press*, 3 F.4th at 370. The Court cannot credit "boilerplate statements," like the ones provided here. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot., 43*6 F. Supp. 3d 90, 106 (D.D.C. 2019).

The Government has not demonstrated that there is any genuinely likely foreseeable harm. The full MPP Memo should be released.

**Conclusion**

For the above reasons, the Court should deny the Government's motion for summary judgment. Instead, the Court should grant summary judgment to the Plaintiff Documented and order release of all the withheld and redacted information in these six documents.

Dated: March 8, 2023

Respectfully submitted,                  */s/ Deborah M. Golden*
                                                            Deborah M. Golden, D.C. Bar #470578
                                                            The Law Office of Deborah M. Golden
                                                            700 Pennsylvania Ave. SE, 2nd Floor
                                                            Washington, D.C.  20003
                                                            Telephone: (202) 630-0332
                                                            dgolden@debgoldenlaw.com

                                                            *Counsel for Plaintiff Documented*