UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DOCUMENTED,

               Plaintiff,

       v.

DEPARTMENT OF HOMELAND
SECURITY,

               Defendant.

Civil Action No. 21-3142 (RCL)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT AND
<u>REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ERIKA OBLEA, DC BAR #1034393
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
202-252-2567
erika.oblea@usdoj.gov

*Attorneys for the United States of America*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

    I.      Defendants Properly Applied FOIA Exemption 5 ............................................... 3

          A.     The Withholdings Invoking the Deliberative Process Privilege Are
                Appropriate. ............................................................................................ 3

          B.     The Withholdings Invoking the Attorney-Client Privilege Are
                Appropriate. ............................................................................................ 8

          C.     Defendants Identified the Foreseeable Harm That Would Result from
                Disclosure. .............................................................................................. 8

    II.     Defendants Released All Reasonably Segregable Information. ........................... 16

CONCLUSION ......................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Abramyan v. Dep't of Homeland Sec.*,
   6 F. Supp. 3d 57 (D.D.C. 2013) ............................................................................. 4

*Amadis v. Dep't of State*,
   971 F.3d 364 (D.C. Cir. 2020) ................................................................. 6, 7, 14

*Ams. for Prosperity Found. v. Ctrs. for Medicare & Medicaid Servs.*,
   Civ. A. No. 21-2021 (CJN), 2024 WL 578955 (D.D.C. Feb. 13, 2024) ......... 15, 16

*Ancient Coin Collectors Guild v. Dep't of State*,
   641 F.3d 504 (D.C. Cir. 2011) .............................................................................. 4

*Armstrong v. Exec. Off. of the President*,
   97 F.3d 575 (D.C. Cir. 1996) .............................................................................. 16

*Canning v. Dep't of Justice*,
   567 F. Supp. 2d 104 (D.D.C. 2008) .................................................................... 16

*Cause of Action Inst. v. Dep't of Veterans Affairs*,
   Civ. A. No. 20-997 (BAH), 2021 WL 1549668 (D.D.C. Apr. 20, 2021) ......... 14-15

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ................................................................................................ 7

*Elec. Frontier Found. v. Dep't of Justice*,
   739 F.3d 1 (D.C. Cir. 2014) ................................................................................ 8

*Energy Policy Advocates v. Dep't of State*,
   Civ. A. No. 19-3307 (TNM), 2023 WL 4198200 (D.D.C. June 27, 2023) ........... 15

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ........................................................................................ 13

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ............................................................................ 4

*Judicial Watch, Inc. v. Dep't of State*,
   557 F. Supp. 3d 52 (D.D.C. 2021) ................................................................. 14, 15

*Judicial Watch, Inc. v. Dep't of Defense*,
   847 F.3d 735 (D.C. Cir. 2017) ........................................................................... 13

*Krikorian v. Dep't of State*,
   984 F.2d 461 (D.C. Cir. 1993) ............................................................................ 8

*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ............................................................... 3

*Mapother v. Dep't of Just.*,
  3 F.3d 1533 (D.C. Cir. 1993) ........................................................... 3, 4, 5

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) ............................................................... 4

*Miller v. Casey*,
  730 F.2d 773 (D.C. Cir. 1984) ............................................................... 3

*Montrose Chem. Corp. v. Train*,
  491 F.2d 63 (D.C. Cir. 1974) ............................................................. 5, 6

*Petrol. Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ........................................................... 4, 8

*Reporters Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (D.C. Cir. 2021) ...................................................... 3, 6, 7, 9

*Reporters Comm. for Freedom of the Press v. Customs & Border Prot.*,
  567 F. Supp. 3d 97 (D.D.C. 2021) ...................................................... 9, 10

*River v. Army Corps of Eng'rs*,
  Civ. A. No. 16-2327 (JMC), 2023 WL 4105168 (D.D.C. June 21, 2023) .................... *passim*

*Rosenberg v. Dep't of Defense*,
  442 F. Supp. 3d 240 (D.D.C. 2020) ......................................................... 14

*Sussman v. U.S. Marshals Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ............................................................ 16

*Tax Analysts v. IRS*,
  117 F.3d 607 (D.C. Cir. 1997) ........................................................ 13-14

*Tobias v. Dep't of Interior*,
  Civ. A. No. 22-167 (BAH), 2024 WL 894925 (D.D.C. Mar. 1, 2024) .................... 14

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ............................................................. 3

**Statutes**

6 U.S.C. § 557 ..................................................................................... 7
8 U.S.C. § 1103 ................................................................................... 7
8 U.S.C. § 1254a .................................................................................. 7

Defendant Department of Homeland Security (the "Department") respectfully files this combined reply in support of its motion for summary judgment ("Motion" or "Mot.," ECF No. 22) and opposition to Plaintiff's cross-motion for summary judgment (ECF No. 24) in this Freedom of Information Act ("FOIA") case. For the reasons stated below and in Defendant's Motion, summary judgment should be granted for Defendant.

## BACKGROUND

This FOIA case involves six decision memoranda written to aid the Secretary of Homeland Security (the "Secretary") determine the direction of certain controversial and sensitive immigration programs or policies.

Five of these memoranda (the "Nicaragua Memo," "Honduras Memo," "Duke Honduras Memo," "Haiti Memo," and "Somalia Memo") were written to aid the Secretary in designating certain countries with Temporary Protected Status – a status that allows nationals from those designated countries to seek protection from Department detainment based on their immigration status. *See Temporary Protected Status*, U.S. Citizenship & Immigr. Servs., https://www. uscis.gov/humanitarian/temporary-protected-status (last visited June 7, 2024). The sixth memorandum (the "Protocols Memo") was written to aid the Secretary determine whether to extend a contract for immigration hearing facilities at two ports of entry into the United States. These facilities were part of the Migrant Protection Protocols (the "Protocols") – a program requiring those arriving to the United States by land from Mexico to be returned to Mexico pending removal proceedings. *Court Ordered Reimplementation of the Migrant Protection Protocols*, Dep't of Homeland Sec., https://www.dhs.gov/archive/migrant-protection-protocols (last visited June 7, 2024).

By their very nature, the six decision memoranda were part of the "give and take" of the deliberative process, in which thoughts, impressions, and recommendations, intertwined with

factual information, were conveyed to help the Secretary reach a decision about certain countries'
Temporary Protected Status designations and the Protocols hearing facilities.

The reasonableness of Defendant's search for records is not at issue in this litigation. Jt.
Status Rpt. At 1 (Nov. 20, 2023), ECF No. 17. The only dispute is Defendant's withholdings
pursuant to Exemption 5. *Id.* In its opening brief, Defendant supported the application of
Exemption 5 with the Declaration of Catrina M. Pavlik-Keenan dated February 6, 2024, ECF
No. 22-3, and the accompanying Vaughn Index ("First *Vaughn* Index"), ECF No. 22-4.

In its Cross Motion for Summary Judgment and Opposition to Defendant's Motion[1],
Plaintiff raised several issues with Defendant's application of Exemption 5 and Defendant's stated
foreseeable harm that would come to pass if such information were disclosed.

After careful consideration, Defendant has decided to make supplemental releases of some
of the information that was previously withheld. 2d Decl. of Catrina M. Pavlik-Keenan, dated June
7, 2024 ("2d Pavlik-Keenan Decl.") ¶¶ 12, 24. In addition, the Department is no longer relying on
the attorney-work product privilege to withhold information in the Honduras Memo and the
Nicaragua Memo. *Id.* ¶ 6. The Department is also no longer relying on the attorney-work product
privilege or the attorney-client communication privilege to withhold information in the Somalia
Memo. *Id.* ¶ 24.

Nonetheless, there remain twenty-nine pages at issue withheld in part under Exemption 5's
deliberative process and attorney client-communication privileges. *See* Supplemental *Vaughn*
Index. As to these remaining withholdings, the Second Pavlik-Keenan Declaration provides further
information explaining why the Department continues to withhold these records in part and in full.

---

[1]     Plaintiff's Cross Motion for Summary Judgment (ECF No. 24) and Opposition to
Defendant's Motion (ECF No. 23) are referred to as "Plaintiff's Cross Motion" and cited as "Pl.
Br."

*See* 2d Pavlik-Keenan Decl. To that end, Defendant has attached a Supplemental *Vaughn* Index for these records, which is discussed in greater detail below.

## ARGUMENT

Defendant's Motion should be granted, and Plaintiff's Cross Motion denied, because Defendants have "describe[d] the justifications for nondisclosure with reasonably specific detail, demonstrate[d] that the information withheld logically falls within the claimed exemption, and [is] not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)). As the D.C. Circuit has explained, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007)) (internal quotation marks omitted). Defendant has met this standard, particularly in light of the additional information provided in the Supplemental *Vaughn* Index. Furthermore, Plaintiff has not demonstrated and cannot demonstrate anything illogical or implausible in the Department's justification of its Exemption 5 claims.

## I.   Defendants Properly Applied FOIA Exemption 5.

### A.   The Withholdings Invoking the Deliberative Process Privilege Are Appropriate.

As explained in Defendant's Motion (ECF No. 22-1 at 15-16), the deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).

First, Plaintiff suggests that the withheld information in all six memoranda contains purely factual information. *See* Pl. Br. at 10-11, 16-17. This argument lacks merit.

For all six memoranda, the Department has explained that it had already segregated out

any factual and nonexempt portions for release. Pavlik-Keenan Decl. ¶¶ 13, 16, 19, 22, 25, ECF No. 22-3. The Department performed an additional segregability review and released additional information from two full pages in the Somalia Memo. 2d Pavlik-Keenan Decl. ¶ 24. The Department also released factual information in the purpose section, the discussion section, and component circulation sections of the Nicaragua Memo and Honduras Memo. *Id.* ¶ 12.

To the extent that there is any other factual information withheld in the Duke Honduras Memo, Haiti Memo, and Somalia Memo, the Department has explained how such "factual evidence and eligibility criteria" were inextricably "intertwined" with the "candid assessments" provided to Department leadership about the Temporary Protected Status designations for these countries. Pavlik-Keenan Decl. ¶¶ 18, 21, 24. As this Court has explained, "even purely factual information is protected by the deliberative process privilege when it is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Abramyan v. Dep't of Homeland Sec.*, 6 F. Supp. 3d 57, 64 (D.D.C. 2013) (internal quotation marks omitted); *In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997). Indeed, the D.C. Circuit has "caution[ed] against reflexive fact/opinion characterization as the way to decide the full range of Exemption 5 cases," as "the disclosure of even purely factual material may so expose the deliberative process within an agency that the material is appropriately held privileged." *Petrol. Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Mead Data Central, Inc. v. Dep't of Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977)). As a result, purely factual information is nonetheless protected when "it reflects an 'exercise of discretion and judgment calls.'" *Ancient Coin Collectors Guild v. Dep't of State,* 641 F.3d 504, 513 (D.C. Cir. 2011) (quoting *Mapother*, 3 F.3d at 1539). In particular, the deliberative process privilege protects "factual material . . . assembled through an exercise of

judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action." *Mapother,* 3 F.3d at 1539; *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 68-69 (D.C. Cir. 1974) (protecting summary of public testimony compiled to assist EPA Administrator's decision).

Indeed, the Department further explains in the Second Pavlik-Keenan Declaration how release of such inextricably intertwined factual information in these three decision memoranda would expose the Department's deliberative process. *See* 2d Pavlik-Keenan Decl. ¶ 18 (stating that information withheld in Duke Honduras Memo was "commentary on the Secretary's interaction with other federal government agencies and [Department] components that helped inform her decision"); *id.* ¶¶ 20, 23 (stating that the Haiti Memo and Somalia Memo "not only provide[d] factual background, but also assisted the Secretary in understanding how to analyze those facts to make informed, legally sufficient decisions in line with the Department's goals").

Furthermore, contrary to Plaintiff's assertions, there is no basis for this Court to infer there is still purely factual information withheld in the Haiti Memo simply because information about Haiti's Temporary Protected Status designation has already been released in *Ramos v. Nielsen*, Civ. A. No. 18-1554 (N.D. Cal.). *See* Pl. Br. at 13-14. The Department explains that the information released in *Ramos* was "provided in a different context and purpose" than what the information was used for in the Haiti Memo. 2d Pavlik-Keenan Decl. ¶ 21. The Department explains that, in *Ramos*, "some information released was part of the Federal Register notice and some information released was part of a different [U.S. Citizenship & Immigration Services("USCIS")] record documenting Haiti's conditions for [Temporary Protected Status] considerations that were not entirely presented in the same way for the Secretary's review." *Id.* And for the Haiti Memo at issue here, the Department explains that any purely factual information

withheld was "intertwined with the different options presented" and that "the facts are analyzed together in order to make informed, legally sufficient decisions in line with the Department's goals." *Id.*

Second, Plaintiff argues that the information withheld in the "Duke Honduras Memo" was not deliberative because the memorandum flowed from a superior to an inferior. Pl. Br. at 9-10. But the D.C. Circuit has squarely held that "[t]here is no such directional precondition to protection under the deliberative process privilege." *Reps. Comm.*, 3 F.4th at 364. Rather, "at the end of the day, the key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.*; *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020).

Here, the Department explains how the information withheld in the Duke Honduras Memo was part of the "give and take" of the consultative process that the Secretary engaged with the USCIS Director before determining Honduras's Temporary Protected Status. The Department explains that, in the withheld information, the Secretary was conveying to the USCIS Director her "commentary on [her] interaction with other federal government agencies and [Department] components that helped inform her decision." 2d Pavlik-Keenan Decl. ¶ 18. Also in the Duke Honduras Memo, "the Secretary noted further action she wanted to take with the government of Honduras, which was not a basis for her decision." *Id*. Here, a decision on Honduras's Temporary Protected Status was entirely at the Secretary's discretion and "require[d] the Secretary to apply a strict statutory framework to a complicated array[] of facts, and requires consultation with other federal government agencies, [Department] components, and the foreign government that is

impacted." *Id.* ¶ 18; 8 U.S.C. § 1254a(b).[2] It therefore follows that the Secretary's comments about information she had gathered from such agencies and Department components, as well as her discussion of an option she wanted to explore, are part of the "give and take" of her consultative process with the USCIS Director before she made a final decision on Honduras's status designation. *See Reps. Comm.*, 3 F.4th at 364 (finding FBI Director's emails to subordinates were deliberative where "no allegation that Director Comey was providing any sort of direction or explaining the basis for a final decision to his subordinates in these emails," but rather "contain the type of back-and-forth exchange of ideas, constructive feedback, and internal debate").

Furthermore, contrary to Plaintiff's assertion that certain information withheld came from outside the government, Pl. Br. at 10, the withheld information contained information obtained from "other federal government agencies and [Department] components" 2d Pavlik-Keenan Decl. ¶ 18. As a result, the source of the withheld information was within another agency and qualifies as intra-agency pursuant to Exemption 5's deliberative process privilege. *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (noting to qualify under Exemption 5, "its source must be a Government agency," and defining agency to include "any executive department").

Finally, Plaintiff argues that the signature level in the Protocols Memo is not deliberative. Pl. Br. at 16. But the Department explains that the signature level justification section contained "the options and available courses of action the Acting Secretary could take and the preferred recommended action." 2d Pavlik-Keenan Decl. ¶ 16. As a result, because the information

---

[2]   While the statute originally provided the Attorney General with the responsibility, the responsibility has since been transferred to the Secretary. *See* 8 U.S.C. § 1103; 6 U.S.C. § 557.

withheld in the signature line and in the options paragraph contains "materials embodying officials' opinions," *Petrol. Info Corp.*, 976 F.2d at 1434, it is also properly protected under the deliberative process privilege. *See Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 10 (D.C. Cir. 2014) (holding that recommendation memorandum that "examines policy options available to [an agency]" is "precisely the sort of advisory opinion . . . comprising part of a process by which governmental decisions and policies are formulated that is covered by the deliberative process privilege" (internal quotation marks omitted)); *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (deliberative process privilege applied to draft documents proposing two options for replies to public inquiries).

For these reasons and those stated in Defendant's Motion, Defendant properly invoked Exemption 5's deliberative process privilege for all six decision memoranda at issue.

**B.      The Withholdings Invoking the Attorney-Client Privilege Are Appropriate.**

The attorney-client privilege has only been invoked in the Honduras Memo and the Nicaragua Memo. *See* 2d Pavlik-Keenan Decl. ¶¶ 6, 24; Supplemental *Vaughn* Index. Plaintiff does not dispute that Defendant properly invoked the attorney-client communication privilege for these two memos. Pl. Br. at 8. Plaintiff therefore only challenges the Department's explanation of the foreseeable harm for these records, *id.*, which the Department has sufficiently explained as detailed below.

**C.      Defendants Identified the Foreseeable Harm That Would Result from Disclosure.**

Foreseeable harm would result from disclosure of the records shielded by Exemption 5. As the Court has previously explained, the foreseeable harm standard requires Defendants to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency

deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. But for the "prominent and sacrosanct" attorney-client relationship protected under the attorney-client and/or work-product privileges, "'for which the risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated,' an agency may not need to provide as much information to satisfy the foreseeable harm requirement." *Friends of the Rivers v. Army Corps of Eng'rs*, Civ. A. No. 16-2327 (JMC), 2023 WL 4105168, at *5 (D.D.C. July 21, 2023) (quoting *Reps. Comm. for Freedom of the Press v. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021)). "Although FOIA requires that an agency provide a 'non-generalized explanation of the foreseeable harm that would result from disclosure' of materials protected by the attorney-client and/or work-product privileges, establishing that one or both of those privileges apply 'will go a long way' towards satisfying that burden." *Id*. (quoting *Reps. Comm.*, 567 F. Supp. 3d at 120).

In this light, Plaintiff erroneously contends that the Department's *Vaughn* index contains generic language on foreseeable harm that has been found insufficient in other cases. Pl.'s Br. at 11-13, 17. This argument is not supported by the record.

In its First *Vaughn* Index and First Pavlik-Keenan Declaration, the Department provided a specific description of the foreseeable harm that would ensue from disclosure of the materials withheld under the deliberative process privilege, noting that the release would "be misleading to the public, inhibit the candid discussions of issues" between employees, including Senior Leaders, "and be detrimental to the decision-making process." Pavlik-Keenan Decl. ¶¶ 15, 18, 21, 24; *see also id.* ¶ 12. The Department further clarified, noting that release would impair the immigration policy and practice decision-making process and lead to a chilling effect, as senior leaders "would no longer include underlying deliberative and pre-decisional content when preparing" such recommendation or decision memoranda. ¶¶ 15, 18, 21, 24; *see also id.* ¶ 12. The Department

further noted that "deliberations amongst and between [Department] Leadership" regarding Temporary Protected Status designations and immigration related facility decisions, in the past and the future, "require total candor and confidentiality," to ensure decisions are properly made on these issues. ¶¶ 15, 18, 21, 24; *see also id.* ¶ 12. The concern is particularly real where decisions on Temporary Protected Status designations "will continue to be made in the future," *id.* ¶¶ 12, 18, 21, 24, and decisions on immigration hearing infrastructures "will likely continue to be made in the future depending on various administration immigration priorities," *id.* ¶ 15, and if any underlying deliberations or analysis "are to be provided to the public, it is less likely the Secretary will receive these comprehensive assessments in writing, which would result in less informed decisions, and ultimately impairs the decision-making process at the Department." *Id.* ¶¶ 15, 18, 21, 24; *see also id.* ¶ 12.

As to its invocation of the attorney-client privilege, the Department noted in its First *Vaughn* Index that the foreseeable harm of the release would be "the chilling effect on the ability of agency attorneys to effectively communicate with their agency clients." *Id.* ¶ 12. The Department further noted that "the disclosure of any advice provided by agency counsel, without the context of any final decision related to the advice, would potentially mislead the public concerning the agency's actual position," and "would inhibit the candid discussion of issues between counsel and its employees." *Id.*  The Department's explanations on foreseeable harm for disclosing information withheld under the attorney-client privilege more than satisfy its low burden, especially given that Plaintiff concedes that the Department properly invoked the attorney-client privilege in this case. *See* Pl. Br. at 8; *Friends of the Rivers*, 2023 WL 4105168, at *5.

Nonetheless, to clear any doubt, in its Supplemental *Vaughn* Index and Second Pavlik-Keenan Declaration, the Department provides further explanation. As to the deliberative process

privilege invoked in the five memoranda touching on Temporary Protected Status designations, the Department explains that "[t]he decision to designate, extend, redesignate, or terminate a country for [Temporary Protected Status] lies in the hands of the Secretary alone, and requires the Secretary to apply a strict statutory framework to a complicated arrays of facts, and requires consultation with other federal government agencies, [Department] components, and the foreign government that is impacted." 2d Pavlik-Keenan Decl. ¶ 18; *see also id.* ¶¶ 11, 20. 23. "Decisions to designate or redesignate a country for [Temporary Protected Status] are discretionary and involve consideration of domestic and international impacts of the decision in addition to applying the facts to the statutory framework." *Id.* ¶¶ 18, 20, 23.

Given this context, the Department has explained that release of information would inhibit counsel from "freely [] provid[ing] advice," *id.* ¶ 11; "would" cause "a significant chilling effect on the Secretary to provide candid advice and direction to Senior Leaders and staff," *id.* ¶ 18; and chill memoranda drafters whom the Secretary "relies on [for] subject matter expertise to effectively apply the law to the facts on the ground, and must receive complete and candid briefing on country conditions, as well as advice on how to interpret such conditions in light of the statutory requirements as these applications are often not at all clear-cut" and whom "assist[] the Secretary in understanding how to analyze those facts to make informed, legally sufficient decisions in line with the Department's goals," *id.* ¶¶ 20, 23.

As to the deliberative process privilege invoked in the Protocols Memo, the Department further explains that "the decision to implement and/or terminate [the Protocols] is highly controversial and sensitive, which is evidenced by the extent of litigation over both the decision to implement and terminate [the Protocols], some of which is ongoing." 2d Pavlik-Keenan Decl. ¶ 15 (noting that "[t]he litigation covers not just the decision to implement but also the decision on how

[the Protocols] w[ere] implemented."); *see Immigrant Defenders v. Wolf*, Civ. A. No. 20-9893 (C.D. Cal.) (ongoing); *Immigrant Defenders v. Wolf*, Civ. A. No. 21-0395 (C.D. Cal.) (ongoing); *M.C.I.R. v. Dep't of Homeland Sec.*, Civ. A. No. 20-3438 (D.D.C.) (ongoing). The Department states there would still be foreseeable harm in releasing information in the Protocols Memo, as in the event the Department must re-implement the Protocols based on the ongoing litigation, the Department "will need to explore the same issues that are discussed within this memorandum." 2d Pavlik-Keenan Decl. ¶ 16. Accordingly, contrary to Plaintiff's assertions (Pl. Br. at 17), the same concerns about chilling candid discussion, recommendation, and provision of advice would nonetheless apply to future deliberations going forward. *Id.* ¶¶ 15-16.

As to the invocation of the attorney-client communication privilege in the Honduras Memo and Nicaragua Memo, the Department also provides additional explanation. The Department explains that the decision to terminate the Temporary Protected Status for Nicaragua was "highly controversial and sensitive" at the time the memo was drafted, which is evidenced by the litigation that resulted. 2d Pavlik-Keenan Decl. ¶ 8; *see Ramos v. Mayorkas*, consolidated with *Bhattarai v. Mayorkas*, Civ. A. No. 18-1554 (N.D. Cal.), No. 18-16981 (9th Cir.) (challenging Temporary Protected Status termination decisions for Nicaragua, El Salvador, Haiti, Sudan, Nepal and Honduras). The Department explains that the attorney drafters of this memo therefore "contemplated litigation related to the termination decision, although not related to the publication of the notice itself," but that "[t]he concepts were inextricably linked [] since the Federal Register notice itself announced the termination decision." 2d Pavlik-Keenan Decl. ¶ 8. The Department also explains that both the Honduras Memo and Nicaragua Memo are "legal memorand[a]" that act as "the vehicle by which counsel advises the Secretary on matters related to [Temporary Protected Status]." *Id.* ¶ 9. The Department explains that decisions related to countries' Temporary

Protected Status designations will be continued to be made in the future, and a result, there would be "future memos that will advise the Secretary" on issues related to these countries' status designations and the extension of the sixteen currently designated countries and the publication of the required notices in the Federal Register. *Id.* ¶¶ 9-10.  As a result, release of such deliberative information in these memos would nonetheless "impede[] the development of this type of [] memorandum," "create[] a significant chilling effect on drafters, preventing counsel from providing open, candid advice on these [] matters," and therefore "impede[] the decision-making process within the Department because leadership has incomplete information." *Id.* ¶ 9. The foreseeable harm will be particularly felt as "[t]here are only a handful of attorneys in two [Department] legal divisions who will draft and review these memos," and "[t]he chilling effect will be very targeted to that subset of attorneys." *Id.* ¶ 10. Finally, the Department notes that release would chill counsel from providing full advice, which is "critical" "[g]iven the complexity of [Temporary Protected Status designations]," "if counsel has to focus on the potential release of the information when drafting the memo." *Id.* ¶ 11.

These explanations in the First *Vaughn* Index, the Supplemental *Vaughn* Index, and the accompanying declarations are squarely within the purpose of the deliberative process privilege and attorney-client privilege as noted by the Supreme Court and the D.C. Circuit. *See Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) ("To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure."); *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (upholding agency's withholding as it "also avoids confusion from premature disclosure of ideas that are not—or not yet—final policy, and misimpressions from 'dissemination of documents suggesting reasons and rationales' not ultimately relied on."); *Tax Analysts v. IRS*, 117 F.3d 607,

618 (D.C. Cir. 1997) (noting that this privilege protects "communications from attorneys to their clients if the communications 'rest on confidential information obtained from the client.'")

Indeed, courts have previously found such explanations to satisfy the Agency's burden to articulate a reasonable foreseeable harm that would result from disclosure. *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020) (finding agency established foreseeable harm by noting that disclosure "would discourage line attorneys from candidly discussing their ideas, strategies, and recommendations, thus impairing the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals" (cleaned up)); *Tobias v. Dep't of Interior*, Civ. A. No. 22-167 (BAH), 2024 WL 894925, at *9 (D.D.C. Mar. 1, 2024) (finding foreseeable harm where disclosure would discourage "lack of candor" and therefore affect decision-making on certain permit applications and "mislead the public and cause public confusion by releasing information that does not represent a final agency decision" (internal quotation marks omitted); *Rosenberg v. Dep't of Def.*, 442 F. Supp. 3d 240, 261 (D.D.C. 2020) (finding that explanations that would "inhibit officials from engaging in frank discussions about these issues and exploring alternatives going forward . . ." and as a result, "would hamper agency-decision making," and would also "provide[] the public with an erroneous understanding of agency-decisionmaking" "provide[d] more than adequate detail and context to satisfy the agency's heightened burden." (cleaned up)); *Jud. Watch, Inc. v. Dep't of State*, 557 F. Supp. 3d 52, 61 (D.D.C. 2021) (finding foreseeable harm adequately described where State Department explained that, "[w]ithout the comfort of knowing that their candid discussions on sensitive legal issues will remain private within the Department, State officials and attorney-advisers would foreseeably be discouraged from engaging in those important discussions in the first place, thus seriously harming the Department's internal deliberative processes."); *Cause of Action Inst. v. Dep't of Veterans*

*Affs.*, Civ. A. No. 20-997 (BAH), 2021 WL 1549668, at *16 (D.D.C. Apr. 20, 2021) (finding foreseeable harm where disclosure, in part, "would chill future agency deliberations, causing harm to the agency's ability to obtain a comprehensive and thoughtful analysis" and "would generate confusion about the VA's plans" (cleaned up)); *Energy Pol'y Advocs. v. Dep't of State,* Civ. A. No. 19-3307 (TNM), 2023 WL 4198200, at *7 (D.D.C. June 27, 2023) (noting that the release of attorney-client communications "would undoubtedly undermine our legal culture because agencies would lose an important tool in their decisionmaking process—employees' ability to confidentially consult agency lawyers" (cleaned up)).

Moreover, based on these explanations, Defendant's stated foreseeable harm is no less diminished simply because Plaintiff contends that general information about the Secretary's country status designations and the Protocols is publicly available (either in the news or *Ramos* litigation), or that subsequent litigation or policy decisions have made protecting the information no longer necessary. *See* Pl. Br. at 13-15, 17-18. As explained above, the Department's stated foreseeable harm related to the resulting chilling effect on the deliberative process, is still applicable to potential future, similar deliberations on Temporary Protected Status designations and the Protocols going forward. *See Jud. Watch*, 557 F. Supp. 3d at 64 ("[D]isclosure of such internal deliberations on this sensitive and controversial subject would cause foreseeable harm to similar deliberative processes going forward."); *Ams. for Prosperity Found. v. Ctrs. for Medicare & Medicaid Servs.*, Civ. A. No. 21-2021 (CJN), 2024 WL 578955, at *3 (D.D.C. Feb. 13, 2024) (finding agency demonstrated foreseeable harm "by providing important context that links the sensitive contents of older materials to reasonably foreseeable present-day harms"). And to clear any doubt, the Department has made additional releases of information that had already been released in the *Ramos* litigation that Plaintiff cites. 2d Pavlik-Keenan Decl. ¶ 12. And for those

memoranda for which the Department did not make an additional release, the Department did not identify any other information in the memoranda that had already been released in *Ramos*. *Id.* ¶¶ 18, 21, 24.

For these reasons, the Department has provided sufficient explanation of the foreseeable harm that would result from disclosure of information withheld under Exemption 5.

## II.  **Defendants Released All Reasonably Segregable Information.**

As Defendants' Motion noted, to establish that all reasonably segregable, nonexempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Plaintiff appears to suggest that Defendant did not properly segregate information in applying Exemption 5.  *See* Pl. Br. at 10-11, 13-14, 16-17. But as explained in the Pavlik-Keenan Declaration, Defendant properly considered each record and released all reasonably segregable information. Pavlik-Keenan Decl. ¶¶ 13, 16, 19, 22, 25.  Since Pavlik-Keenan February 6, 2024, declaration, moreover, Defendant made additional releases of reasonably segregable information on May 23, 2024.   2d Pavlik-Keenan Decl. ¶¶ 12, 24. And as noted above, the Department reviewed the *Ramos* record that Plaintiff cited (Pl. Br. at 13-15) and made additional releases of information that had already been released in *Ramos.* 2d Pavlik-Keenan Decl. ¶ 12. For those memoranda for which the Department did not make an additional release, the Department did not identify any other information in the memoranda that had already been released in *Ramos*. *Id.* ¶¶ 18, 21, 24.

Thus, the Department has sufficiently explained with "reasonable specificity" that the information that it has withheld cannot be further segregated.

## CONCLUSION

For all the reasons set forth above, as well as in Defendant's Motion, Defendant's supporting declarations, and *Vaughn* indices, Defendant respectfully requests that the Court grant summary judgment in its favor.


Dated:  June 7, 2024                         Respectfully submitted,

                                             MATTHEW M. GRAVES, DC Bar #481052
                                             United States Attorney

                                             BRIAN P. HUDAK
                                             Chief, Civil Division

                                   By:       _____/s/ *Erika Oblea*_____
                                             ERIKA OBLEA, DC Bar #1034393
                                             Assistant United States Attorney
                                             601 D Street, N.W.
                                             Washington, D.C.  20530
                                             (202) 252-2567
                                             erika.oblea@usdoj.gov

                                             *Attorneys for the United States of America*