**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DOCUMENTED**,

    *Plaintiff,*

v.

**DEPARTMENT OF HOMELAND SECURITY**,

    *Defendant.*

Case No. 1:21-cv-3142-RCL

## MEMORANDUM ORDER

Before the Court in this Freedom of Information Act ("FOIA") dispute is the Department of Homeland Security's ("DHS") Motion [ECF No. 39] for Reconsideration of the Court's Order [ECF No. 36] of September 20, 2024. For the reasons contained herein, the Motion is **DENIED**.

### I. BACKGROUND

In this FOIA dispute, the plaintiff, a non-profit focused on immigration news and policy, sought disclosure of certain records by DHS, most of which related to the Department's consideration of various countries for Temporary Protected Status pursuant to 8 U.S.C. § 1254a. *See generally Documented v. Dep't of Homeland Sec.*, No. 21-cv-3142-RCL, 2024 WL 4253130, at *1–2 (D.D.C. Sept. 20, 2024). In response to cross-motions for summary judgment, this Court on September 20, 2024 ordered DHS to do two things. First, with respect to a document referred to throughout this litigation as the "Duke Honduras Memo," the Court held that certain redacted content in that memorandum was not exempt from disclosure under FOIA, whereas other content in that same memorandum was properly withheld. Accordingly, the Court ordered DHS to either produce a version of that record with the non-exempt material unredacted, or else file a supplemental affidavit explaining why the non-exempt material in that record is not reasonably

1

segregable from the exempt material. *Id.* at *5–7. Second, the Court ordered DHS to disclose in full a document called the "Somalia TPS Memo," because DHS had failed to articulate, with reasonable specificity, a foreseeable harm that would likely result from its disclosure. *Id.* at *7–9.

On October 18, 2024, DHS submitted a Motion for Reconsideration of the Court's Order. Mot. for Reconsideration, ECF No. 39. DHS's Motion does not request reconsideration of the Court's Order with respect to the Duke Honduras Memo. To the contrary, DHS's Motion demonstrates that the agency has complied in full as to that document: it has produced a new version of the Duke Honduras Memo, in which the non-exempt material (concerning the Secretary's consultations with other Executive Branch stakeholders) is disclosed in full and the exempt material (concerning the Secretary's future plans for engagement with the Honduran government) remains redacted. *See* Duke Honduras Memo 1, Mot. for Reconsideration Ex. A, ECF No. 39-2. DHS also filed a supplemental affidavit averring that the remaining redacted portion of the Duke Honduras Memo contains no reasonably segregable non-exempt material and that disclosure of this portion would hamper the Secretary's ability to provide direction to DHS leadership. *See* 3d Pavlik-Keenan Decl. ¶¶ 9–10, Mot. for Reconsideration Attach. 1, ECF No. 39-1. DHS's avowal that the remaining redacted portion contains no reasonably segregable non-exempt material is entitled to a presumption of compliance with FOIA's segregability requirement. *See Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). And the possibility of chilling candid intra-agency discussion by disclosing potentially sensitive discussions of future plans with foreign government partners is certainly a credible threat. Accordingly, the Court has no trouble determining that DHS has satisfied its obligations with respect to the Duke Honduras Memo.

However, DHS's Motion urges the Court to reconsider its determination that the Somalia TPS Memo should be disclosed. DHS argues that the Court committed a "clear error of fact" when it issued its Opinion and Order by failing to give the agency's declarations fulsome consideration. *See* Mot. for Reconsideration 7–10. In the alternative, the agency asks the Court for a "second chance" to justify its withholdings, and to that end submits a supplementary affidavit containing additional details as to the expected harm that would transpire if the Somalia TPS Memo were disclosed. *Id.* at 10–14; *see* 3d Pavlik-Keenan Decl. ¶¶ 11–14. For the reasons that follow, neither argument is persuasive.

## II.    LEGAL STANDARD

"[D]istrict courts retain 'broad discretion to grant or deny a motion for reconsideration,'" and will grant such a motion only if, in their discretion, they find "that 'justice [so] requires.'" *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005) (Lamberth, J.) (first quoting *Cobell v. Norton*, 226 F. Supp. 2d 175, 177 (D.D.C. 2002), then quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). However, "[m]otions for reconsideration are disfavored," *Wright v. FBI*, 598 F. Supp. 2d 76, 77 (D.D.C. 2009) (quotations omitted), and in the interest of judicial efficiency and finality, they generally "may not be used to 'relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *2910 Ga. Ave. LLC v. Dist. of Columbia*, 59 F. Supp. 3d 48, 49 (D.D.C. 2014) (quoting *Jung v. Ass'n. of Am. Med. Colls.*, 226 F.R.D. 7, 9 (D.D.C. 2005)). "[T]he moving party has the burden to demonstrate 'that reconsideration is appropriate.'" *United States v. All Assets Held at Bank Julius*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020) (quoting *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222 (D.D.C. 2017)). Some circumstances in which reconsideration may be warranted include where the Court has "patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a

3

controlling or significant change in the law or facts [has occurred] since the submission of the issue to the Court." *Singh v. George Wash. Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (quoting *Cobell*, 224 F.R.D. at 272).

### III. ANALYSIS

First, DHS argues that the Court did not give the agency's summary judgment briefs and declarations the consideration they deserved when it held that the Somalia TPS Memo must be disclosed. In support, DHS points to language in the agency's original submissions in which it argues first that the memo "involve[s] consideration of domestic and international impacts of the [TPS] decision"; second, that TPS designations have to be made on a recurring basis; and third, that TPS designations are "subject to contentious litigation." Mot. for Reconsideration 8 (citing various paragraphs of the Second Pavlik-Keenan Declaration, Def.'s Reply Attach. 1, ECF No. 30-1). These facts, DHS argues, establish that the Somalia TPS Memo is sufficiently "sensitive" and "high-profile" that disclosure of the memo would chill internal agency dialogue going forward, thus raising a realistic expectation of foreseeable harm if the memo were disclosed. *Id.* at 9.

It bears mention (and DHS concedes) that the Second Pavlik-Keenan Declaration advanced some of these facts only in its discussion of documents other than the Somalia TPS Memo. *Id.* at 8. If DHS wished to rely upon these facts to justify its withholding of the Somalia TPS Memo, it should have made that connection explicitly in its briefing. But more importantly, DHS is incorrect to suggest that these factors escaped the Court's attention, and the mere fact that the Court did not expressly address each of them one-by-one in its Opinion does not prove as much. As the Court will now explain, DHS's arguments about the threat of future litigation *did* explicitly appear in the Court's Opinion, while the other arguments to which DHS now gestures did not feature prominently in the Opinion only because they failed to persuade the Court that significant harm is likely to result from disclosure of the Memo.

4

First, the mere fact that TPS memos concern consequential governmental decisions with foreign and domestic political implications does not automatically render them so sensitive as to merit withholding.  The Court's Opinion readily recognized that some internal agency dialogue concerns matters so "sensitive" and "high-profile" that agency personnel would sooner shirk from discussion than have their opinions known to the public.  *See Documented*, 2024 WL 4253130, at *8 n.6.  But although TPS decisions are important, and at the risk of sounding trite, the government renders important policy decisions all the time, not all of which are necessarily "high-profile" or "sensitive," as DHS urges that the Somalia TPS Memo is.  Mot. for Consideration 8.  Aside from the recent instances of TPS litigation (which the Court will address shortly), the agency's summary judgment briefing and declarations provide no reason to believe that Somalia's TPS designation, or TPS designations in general, are so peculiarly controversial that agency personnel would rather eschew candid discussion than risk public disclosure of their deliberations.  Simply pointing out that TPS designations are very important and affect many people is not enough.[1]

Second, the fact that TPS designations will have to be made in the future is irrelevant unless DHS can credibly demonstrate that disclosure of the Somalia TPS Memo will impoverish the intra-agency discussions related to those future designations.  As just discussed, it does not appear to the Court—and DHS has not adequately demonstrated—that disclosure of the Somalia TPS Memo, standing alone, would substantially chill agency dialogue surrounding future TPS designations.  By the agency's own admission, TPS memos are not rare or momentous documents, but rather a

---

[1] Indeed, DHS's seeming intuition—that disclosure of the reasoning behind important agency decisions is inherently likely to chill future deliberations and produce poor policy—flies in the face of a "fundamental" tenet of American administrative law, namely that an agency must ordinarily "set forth its reasons for decision . . . ." *Touros Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (internal quotations omitted).  The supposition is that such transparency generally results in better decision-making, not worse.  *Citizens Ass'n of Georgetown v. Zoning Comm'n*, 477 F.2d 402, 408 (D.C. Cir. 1973) ("[T]he articulation of reasons by an agency . . . afford[s] a safeguard against arbitrary and careless action and is apt to result in greater consistency in an agency's decisionmaking.").  Taken to its logical extreme, DHS's argument would bring the entire edifice of notice-and-comment rulemaking down with it.

5

routine part of the agency's business.  *See* Mot. for Reconsideration 2 (noting that TPS memo drafters "produce such memos on a regular basis").  DHS has not met its burden to show that memo drafters will recoil from putting their thoughts in writing simply because one of their products has been made available to the public through FOIA.[2]

The only other plausible reason to fear that disclosure of the Somalia TPS Memo will chill future agency discussions relates to the third fact that DHS alleges the Court failed to consider: TPS designations have been the subject of recent litigation.  Of the three factors that DHS claims the Court failed to consider, this one is the strangest: in its Opinion, the Court expressly acknowledged an example of such litigation—related, no less, to Somalia's TPS designation.  *See Documented*, 2024 WL 4253130, at *7 (noting "recent Ninth Circuit litigation[] which has revealed . . . DHS briefings related to Somalia's TPS status").  But more to the point, DHS's argument is self-defeating.  There have been multiple legal challenges to TPS designations, at least one of which has resulted in disclosure of internal TPS documents.  *See* Notice of Filing of Administrative Record for Haiti 15, *Ramos v. Nielsen*, No. 3:18-cv-1554-EMC (N.D. Cal. Sept. 5, 2018), ECF No. 113 (disclosing an unredacted copy of a deliberative memo concerning Haiti's TPS redesignation decision).  But there is no indication—at least, DHS does not assert—that agency staff have ceased writing competent TPS memos in the wake of these challenges.  Moreover, even if disclosure of TPS memoranda *would* sometimes lead to and be used in litigation against DHS, it is hardly unusual for a FOIA requester to use documents uncovered through FOIA to sue the government.  If the abstract threat that a record may be used in future litigation were

---

[2] Moreover, if it becomes clear in the future that memo drafters are credibly concerned about disclosure of their personal authorship of a memo, the agency may argue for nondisclosure of the drafters' identities pursuant to FOIA Exemption 6, which protects against disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Because this possibility is not before the Court, the Court expresses no view on whether such an argument is likely to succeed.

enough by itself to satisfy FOIA's foreseeable harm requirement, that requirement would be reduced to a nullity. DHS has not convinced the Court that disclosure of *this particular memo* will induce such grave apprehension of use in future litigation as to shut down future intra-agency debate regarding prospective TPS designation decisions.

DHS's alternative approach is to argue for a "second chance" based on supposedly new details about the Somalia TPS Memo not contained in their original briefing and declarations. Mot. for Reconsideration 14. The agency first reiterates that, in light of recent litigation challenging various countries' TPS designations, TPS memo drafters "are keenly aware of the scrutiny that such decisions may be given if a decision is challenged," and that disclosure of the Somalia TPS Memo will therefore cause agency staff to "feel unable to write openly" about TPS decisions "for fear that such candidness [will] be used against the Department in future litigation." *Id.* at 11–12; 3d Pavlik-Keenan Decl. ¶ 12. Second, the agency argues that this chilling effect will spread to other agencies whose assessments and recommendations are addressed in TPS memos. Mot. for Reconsideration. 12; 3d Pavlik-Keenan Decl. ¶ 13. Third, DHS argues that TPS memos "discuss trends in country conditions that may forecast future decisions" by the agency, which drafters would be reluctant to include if they knew they would be subject to disclosure under FOIA. Mot. for Reconsideration 13; 3d Pavlik-Keenan Decl. ¶ 14. DHS claims that consideration of these new arguments is necessary to prevent "manifest injustice," namely a "chilling effect on Department staff providing candid recommendations regarding the Department's work providing people . . . with . . . an opportunity to obtain legal status in this country . . . ." Mot. for Reconsideration 10.

Setting aside the fact that much of DHS's supposedly new material is actually duplicative of arguments that have already been raised and rejected, the Court perceives no reason, at this

advanced stage of litigation, to permit DHS to raise for the first time facts or arguments that were known to the agency at the time that it submitted its summary judgment briefing. "[A] motion for reconsideration is not to be used 'as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *All Assets Held at Bank Julius*, 502 F. Supp. 3d at 98 (quoting *Klayman v. Jud. Watch, Inc.*, 296 F. Supp. 3d 208, 213–14 (D.D.C. 2018)). That is precisely what DHS is attempting to do here, and this is sufficient grounds to deny the Motion.

Moreover, in forecasting that the Court's Order will work a "manifest injustice" by chilling all future internal discussion of TPS designations, and therefore undermining the quality of future TPS decisions, the agency seems to miss an important point about the scope of the Court's Opinion. The Court did not hold, and does not now hold, that *all* TPS memos must necessarily be disclosed in response to a FOIA request. Rather, the Court held that this *particular* TPS memo must be disclosed because DHS did not meet its burden as a litigant to show that disclosure would result in some significant foreseeable harm. *Documented*, 2024 WL 4253130, at *8. Because the agency has not established its entitlement to reconsideration, the Court need not take a position on whether DHS *could* have met that burden, had it raised its new arguments from the beginning. In future FOIA litigation, DHS should raise its strongest and most pointed arguments against disclosure from the outset, rather than relying on "boilerplate, unparticularized, and hypothesized" predictions of future harm. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 371 (D.C. Cir. 2021).

\*   \*   \*

### IV.  CONCLUSION

Therefore, upon consideration of the defendant's Motion [39] for Reconsideration, and the entire record herein, and for the foregoing reasons, it is hereby

**ORDERED** that the Motion for Reconsideration is **DENIED**; and it is further

**ORDERED** that the Defendant shall produce an unredacted version of the Somalia TPS Memo to the plaintiff within 14 days of the issuance of this Order; and it is further

**ORDERED** that the plaintiff's Consent Motion [41] for Extension of Time to File a Response is **DENIED AS MOOT**.

Date: 11-1-24

Royce C. Lamberth
United States District Judge